379 So.2d 225 (1979)
BENTON CASING SERVICE, INC.
v.
AVEMCO INSURANCE COMPANY.
No. 63946.
Supreme Court of Louisiana.
June 25, 1979.
Rehearing Denied November 1, 1979.
*226 Stanwood R. Duval, Jr., Duval, Arceneaux, Lewis & Funderburk, Houma, for plaintiff-applicant.
Robert E. Peyton, Christovich & Kearney, New Orleans, for defendant-respondent.
DENNIS, Justice.
Benton Casing Service, Inc. (Benton), a Louisiana corporation domiciled in Terrebonne Parish, brought suit against its insurer, Avemco Insurance Company (Avemco), a foreign corporation authorized to do business in Louisiana, to recover for the loss of an airplane. Avemco denied coverage on the ground that the pilot operating the aircraft at the time of the crash was not named by the policy as a pilot during whose operation the policy applied.
On September 1, 1976, Harry Roth, an employee of Benton, took off from Lafayette Airport in a Cessna 185 amphibian owned by Benton and insured by Avemco. Roth testified that the plane's engine lost power during take-off, and that he was unable to return to the field before crashing. At the time of the crash Roth was not named as one of the pilots during whose operation of the plane the policy was applicable. Nevertheless, the trial court awarded the plaintiff recovery in the amount of $42,500, the value of the plane prior to the crash, less its salvage value, together with interest and costs. The court of appeal reversed the judgment of the trial court, holding that coverage was not afforded by the policy during Roth's flight. In its opinion, the intermediate court treated the policy provision limiting coverage to flights by named pilots as a "warranty, representation or condition" within the meaning of the "anti-technical statute," La.R.S. 22:692, see Rodriguez v. Northwestern National Insurance Co., 358 So.2d 1237 (La.1978), but nevertheless refused to apply the statute to permit recovery by the plaintiff on the policy.[1]
We granted writ of certiorari to consider the appellate court's opinion that La.R.S. 22:692, which prevents insurance companies from denying coverage because of a breach of a non-material "warranty, representation or condition," applies only to losses by fire. Upon closer examination, however, we conclude that the court of appeal erred in tacitly treating the pertinent provision of the policy as a "warranty, representation or condition." The policy provision in question is instead an enforceable exception to coverage or liability. Therefore, La.R.S. 22:692 is not applicable to the type of contractual provision involved herein, but the court of appeal nevertheless reached the correct result.
A warranty is a statement on the face of the insurance contract whereby the insured expressly contracts as to the existence of certain facts, circumstances or conditions essential to the validity of the contract of insurance. See 12 G. Appleman, Insurance Law and Practice, §§ 7341-49, 7353-59 (1943); 7 G. Couch, Cyclopedia of Insurance, §§ 35:2, 36:1-8 (2d ed. R. Anderson 1961); 43 Am.Jur.2d, Insurance, § 744. A representation is an oral or written statement by the insured made prior to the completion of the insurance contract giving information as to some fact or state of facts with respect to the subject of the insurance, which is intended or necessary for the purpose of enabling the insurer to determine whether it will accept the risk, and at what premium. 12 G. Appleman, Insurance Law and Practice, §§ 7291-93, 7341-49 (1943); 7 G. Couch, Cyclopedia of Insurance, § 35:2-3, 5-13 (2d ed. R. Anderson 1961); 43 Am. *227 Jur.2d, Insurance, § 734. A condition precedent is one that must be performed before the contract becomes effective and calls for the happening of some event or the performance of some act after the terms of the contract have been agreed upon before the contract shall be binding on the parties. 12 G. Appleman, Insurance Law and Practice, § 7352 (1943); 7 G. Couch, Cyclopedia of Insurance, § 36:46-47 (2d ed. R. Anderson 1961); 43 Am.Jur.2d, Insurance, § 755. A condition subsequent presupposes an absolute obligation under the policy, and provides that the policy shall become void or its operation defeated or suspended, or the insurer relieved wholly or partially from liability, upon the happening of some event or the doing or omission of some act. 7 G. Couch, Cyclopedia of Insurance, § 36:48 (2d ed. R. Anderson 1961); 43 Am.Jur.2d, Insurance, § 755.
In denying coverage in the present case, Avemco relies on the following provision contained in the declarations section of the insurance policy:
"Item 7. PILOTS: This policy applies when the aircraft is in flight, only while being operated by one of the following pilots (indicated by [X] below) who, (1) holds a valid and effective Pilot and Medical Certificate, (2) has a current biennial flight review and (3) if carrying passengers, has completed at least three Take-Offs and Landings within the preceding 90 days in an aircraft of the same make and model as the insured aircraft:
"[X] (a) SAMMY WHATLEY
"[ ] (b)
"[ ] (c) Any Commercial Pilot in the employ of an F.A.A. approved Aircraft Repair Station in connection with inspections or repairs to be or that have been performed on the insured aircraft or by any Federal Aviation Administration Inspector or any Certified Flight Instructor for the purpose of instructing anyone named in Item 7(a)."
This statement in the policy's declarations is not a warranty, representation, condition precedent or condition subsequent. By this provision the insured did not warrant the existence of facts essential to the validity of the contract or represent prior to the contract information useful or necessary to the insurer in estimating the risk and setting the premium. Nor did the provision impose a condition precedent or subsequent, the happening of which would prevent the policy from coming into effect, on the one hand, or render it void on the other.
Rather, item 7 is an exception or exclusion of certain risks from coverage by the policy; it provides that the insurance provided by the policy will apply only when the aircraft is in flight and is being operated by the pilots designated.
Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations are not in conflict with statutory provisions or public policy and so long as the limitations are unambiguous and easily understandable. Oceanonics, Inc. v. Petroleum Distributing Co., 292 So.2d 190 (La.1974); Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So.2d 72 (1939). The provision at issue in the instant case is not ambiguous; nor does it violate any statute or public policy of the state. Because there are relatively few individuals qualified to safely operate an aircraft, and because of the enormous risk inherent in the improper operation of an aircraft, the insurer has a legitimate interest in knowing precisely who will be operating the insured aircraft in order that it may evaluate the qualifications of the proposed pilots and exclude risks which it will not insure.[2]See National Insurance Underwriters v. Carter, 17 Cal.3d 380, 131 Cal.Rptr. 42, 551 P.2d 362 (1976). Moreover, the insurer has a legitimate interest in knowing how many pilots will be using the insured aircraft, and, in fact, an underwriter for Avemco testified that the addition of a pilot to the policy *228 involved herein could increase the risk and the premium charged to the insured.[3]
It is true that the limitation stated in item 7 of the declarations does not appear in the section of the policy headed "exclusions." However, the language used in the provision and its prominent location in the declarations section of the policy clearly apprised the insured that the policy would apply only when the aircraft was in flight and while being operated by one of the designated pilots. Courts in other jurisdictions have consistently given effect to unambiguous policy provisions which state that the aircraft will not be covered while being operated by a pilot not named in the policy, See, e. g., Smith v. Orion Insurance Co., 298 F.2d 528 (10th Cir. 1961); Roberts v. Underwriters at Lloyds London, 195 F.Supp. 168 (S.D.Idaho, 1961); National Insurance Underwriters v. Carter, supra, or by a pilot who does not have the qualifications specified in the policy, see, e. g., Bequette v. National Insurance Underwriters, Inc., 429 F.2d 896 (9th Cir. 1970); Pacific Indemnity Co. v. Kohlhase, 9 Ariz.App. 595, 455 P.2d 277 (1969); Jim Hawk Chevrolet-Buick, Inc. v. Insurance Company of North America, 279 N.W.2d 466 (Iowa S.Ct. 1978); Des Marais v. Thomas, 147 N.Y.S.2d 223 (N.Y.Sup.Ct.1955). See also, Annot., 48 A.L.R.3d 1120, 1136-1143, §§ 6-9 (1973).
For the foregoing reasons, the judgment of the court of appeal is affirmed.
AFFIRMED.
TATE, J., dissents and assigns reasons.
DIXON and CALOGERO, JJ., dissent.
TATE, Justice, dissenting.
I respectfully dissent.
Avemco's policy, Item 7, provided that it applied only as to named pilots who met certain conditions (e. g., held a valid and effective pilot license and medical certificate, etc.). The pilot, Harry Roth, met these requirements. By a simple telephone call, the insured Benton could have added (or, rather, substituted) this employee's name to the list, without any change in premium or change in the risk of Avemco.
In the past, substitution of pilots had been handled very informally, without any strict insistence by the insurer that it be informed each time an old pilot left the employment and a replacement pilot was hired or re-employed.
Under all of these circumstances, in my opinion, the trial court correctly held there was coverage.
It is essentially uncontroverted that the technical failure to telephone the insurer that its employee, Roth, would be the pilot of its plane, did not contribute to the loss and did not increase the moral or physical hazard under the policythat a simple telephone call would have listed him substituted as the pilot, without any increase in premium.
The technical failure to list Roth as pilot occurred under the following conditions: The policy had been renewed November 19, 1975 through November 19, 1976, with Sammy Whatley as the only listed pilot. On January 9, 1976, Benton wrote Avemco to state that Whatley was no longer affiliated but that Benton had temporarily employed a Mr. Billy Kirkpatrick. On September 1, 1976, the accident occurred while Roth was piloting the planeand Roth was apparently the permanent replacement for Whatley and Kirkpatrick. He met all the qualifications, and the record does not indicate that there would have been an increase in premium because of his substitution for Whatley.
The insurer contends that it only covered the plane when Whatley was piloting it, *229 even though Whatley was no longer in the employ of Benton, its insured. It is unwilling to afford coverage to Roth, who was piloting the plane in replacement for Whatley, because Benton did not telephone Avemco and inform it of the identity of the pilot replacing Whatley, even though Roth met all the qualifications for coverage. In effect, the company wishes to collect its premium for affording protection, but to deny any protection whatsoever to the plane when piloted by Whatley's replacement because of the technical failure to inform it of the name of his replacement even though, due to the termination of Whatley's employment, there would in effect be no coverage afforded.
It seems to me to be hypertechnical to hold that there is no coverage due to noncompliance with an incidental policy requirement, not strictly enforced in the past, where the insurer was subjected to no additional moral or physical hazard, and where indeed (under these facts) the enforcement of this policy provision serves no useful end but instead defeats the purpose of the policy for which the insurer collected premiums, namely to protect itself against the loss of its airplane. Cf. La.R.S. 22:692, Rodriguez v. Northwestern National Insurance Company, 358 So.2d 1237 (La.1978).

ON REHEARING
CHARLES A. MARVIN, Justice Ad Hoc.[1]
After the initial consideration of this insurance coverage case on a writ of review directed to the 1st Circuit Court of Appeal, a rehearing was granted to allow for reargument before seven justices.
The issue is whether an aircraft policy covers damage sustained by plaintiff's Cessna aircraft in a crash when it was piloted by an employee of plaintiff who was not named on the declarations page of the policy, but who was a properly certified and licensed pilot.
The insured aircraft, a 1973 Cessna 185 amphibian, FAA No. N51BC, crashed when taking off from the Lafayette airport in September 1976 while being flown by Harry Roth, plaintiff's employee. Roth was not named as a pilot in the declarations page of the policy, but had the qualifications which the insurer required of a pilot who was named in the declarations.
Coverage C of the policy obligates the insurer
"to pay for all loss or damage to the aircraft while in flight ..."
but Item 7 of the declarations provides that
"This policy applies when the aircraft is in flight, only while being operated by one of the following pilots ... who... holds a valid and effective [FAA] ... certificate . . ."
Without assigning reasons, the trial court found coverage. The Court of Appeal found that Item 7 was not an exclusion of coverage, but a warranty, representation, or condition within the meaning of LRS 22:692, an "anti-technical statute" which is designed to preclude the insurer's denying coverage by asserting defenses not materially related to the risk. Rodriguez v. Northwestern Nat. Ins. Co., 358 So.2d 1237 (La.1978). The Court of Appeal nonetheless reversed the trial court on the basis that LRS 22:692 applied only to fire losses and would not be extended to cover the crash loss in this instance.
On original hearing, this court was evenly divided on the question of whether Declarations Item 7 was an exclusion of coverage otherwise afforded by the policy. On rehearing, we find that Declarations Item 7 is not an exclusion, but is in the nature of a warranty or representation by the insured that the only pilot who would be flying the aircraft would be declared to the insurer and that all pilots so declared would have the required FAA certificates. We find that LRS 22:619(A) is also an anti-technical *230 statute and that it is applicable to preclude the insurer's denying of coverage in this instance because it has not been proved that the insured's statement, however false, to the insurer about who would be piloting the aircraft, was made with the intent to deceive.[2] Accordingly, we reverse the Court of Appeal and reinstate the judgment of the trial court.

FACTUAL BACKGROUND
The plaintiff-insured, a corporation servicing the oil and gas industry, first acquired an airplane in 1972. This plane was also a Cessna 185. The Cessna involved here (FAA No. N51BC), was acquired in 1973. The only application contained in this record is one which was signed by the insured for the defendant insurer, Avemco, dated December 3, 1975. This application refers to a Cessna 421 Airplane, FAA No. N1975G, and lists two pilots, Whatley and Acklen.
The policy in question here on the Cessna (N51BC) is for the year November 19, 1975, to November 19, 1976. It provides for $50,000 in all risks coverage, called Coverage C, with $20,000 being shown as an encumbrance on the airplane with a loss payable clause to a Baton Rouge leasing corporation. Whatley was the only pilot named in Item 7 of the declarations page when this policy had its inception on November 19, 1975. Item 7 of the declarations page was later amended by endorsement.
By its letter of January 9, 1976, the insured informed Avemco of a "new" pilot, LaBruyere, and of a "temporary" pilot, Kirkpatrick. This letter did not refer to a policy number or to a particular airplane. The endorsement of this policy, made effective at 12:01 a. m. January 9, 1976, but dated more than a month later, amended Item 7 of the declarations page of the policy (which originally named Whatley), and named only Kirkpatrick as a pilot. La-Bruyere was "not mentioned. This was the last endorsement of the policy before the accident in September 1976.
Mrs. Samaha, an employee before 1973, and since 1973, the office manager, of the corporation, testified that several pilots had flown the insured Cessna amphibian (N51BC) as well as the other aircraft owned by plaintiff. Henry McLaughlin and Jerry Acklen flew the first Cessna. Acklen was called back to the corporation to fly the new Cessna (N51BC) in 1973. Sammy Whatley flew the Golden Eagle, which we deduce was a larger and more expensive aircraft (FAA No. N1975G). Mrs. Samaha mentioned that Ken Vicknair and John LaBruyere were strictly pilots and that other pilots also served as salesmen. She did not otherwise state which of these pilots flew what airplane or airplanes.
Mrs. Samaha had the responsibility of administering the insurance matters of the corporation, including motor vehicle and workmen's compensation insurance. She assumed that the aircraft insurance coverage was similar to motor vehicle insurance. She stated that sometimes on the instruction of a pilot, she would telephone a Mr. Coble at Avemco (Avemco's aviation underwriter, who also testified), to inform Avemco of the fact that a particular pilot was flying the airplane. According to Mrs. Samaha, Coble would inquire of her as to the pilot's qualifications and possession of the proper certification. Coble would then instruct her to follow up the telephone call with a written communication. Even though it appears that other qualified pilots besides Kirkpatrick were flying the aircraft after and probably before January 9, 1976, the only pilots formally named in the declarations page of the policy are Whatley (November 19, 1975, to January 9, 1976) and Kirkpatrick, after January 9, 1976. Even though LaBruyere's name was sent to Avemco with Kirkpatrick's name on January 9, 1976, there is no endorsement of the policy in question which names LaBruyere *231 as a pilot. The insured corporation does not contend that Mrs. Samaha telephoned or wrote Avemco about Harry Roth piloting an airplane.
Avemco's underwriter, Coble, generally corroborated Mrs. Samaha's testimony about the telephone conversations and the procedures followed by Avemco. Harry Roth testified as to his certification by the FAA and the number of hours he had flown in this type airplane. His certificates are in the record. At an earlier time Roth had received a citation by the FAA for an accident, but his license or certificate had not been revoked or suspended.
The testimony of Coble is to the effect that if Mrs. Samaha had telephoned him about Harry Roth flying the insured aircraft, Harry Roth would have been named by endorsement to the policy, as a pilot. The naming of Roth perhaps could have resulted in an increased premium being charged to the insured.[3] The coverage of an insurance policy is not affected, however, by a finding that additional premiums may be owed by the insured. See LeJeune v. State Farm Mutual Automobile Ins. Co., 107 So.2d 509 (La.App. 1st Cir. 1958); Couch on Insurance 2d, § 15:81.

THE INSURANCE CONTRACT
The insurance contract is to be construed as a whole. Labels and headings given to the respective sections of the contract and the placement of the sections of the contract are pertinent to the inquiry of coverage, but one section or its placement is not to be construed separately and at the expense of disregarding other sections or placements. See Harmon v. Lumbermens Mutual Casualty Company, 247 La. 263, 170 So.2d 646 (1965); Hemel v. State Farm Mut. Auto. Ins. Co., 211 La. 95, 29 So.2d 483 (1947); Rancatore v. Evans, 182 So.2d 102 (La.App. 4th Cir. 1966).
While the wording of Declarations Item 3 is not in itself ambiguous, its application as an exclusion of coverage afforded by the policy renders the whole contract ambiguous. "[W]here a limitation of coverage or an exclusion is not placed where it ought to be placed or where it would be expected by the reader, such placement alone may create ambiguity." 13 Appleman, Insurance Law and Practice, Section 7403, p. 323 (1976). Anti-technical statutes have been enacted to preclude the insurer from denying coverage by use of complex policy provisions concerning facts the untutored insured would find relevant to his coverage. Rodriguez, supra. See LRS 22:692, 619(A), discussed infra.
The contract of insurance consists of the declarations page, the endorsements, and the printed policy. The policy consists of four pages and contains four sections: Insuring Agreements, Exclusions, Definitions, and Conditions. The policy states that the declarations page, with endorsements attached to it, is to be inserted between pages two and three of the policy. Provisions of the insurance contract which are pertinent to the circumstances of this case are reproduced in an appendix to this opinion.
The policy states that it is issued in reliance upon the truth of the statements and representations made by the insured in the application and declarations (preamble to policy, Conditions, par. 22) and that, subject *232 to the terms of the policy, the insurer obligates itself to pay for all loss or damage to the aircraft while in flight. (Coverage C).
Loss of either airworthiness of the aircraft or certification of the pilot are conditions which suspend the effect of the guaranteed renewable, AER-1, endorsement. Similarly, there is an express exclusion of any coverage if the aircraft, while in flight, is not then certified as airworthy. Exclusion (g)(1). There is no provision in the exclusions section of the policy which suspends coverage to a pilot whose certification has been revoked or suspended, as in the case of the AER-1 endorsement mentioned.
"Insured" is defined in par. Ill of the Insuring Agreements with respect to liability, Coverage A, as including any person using or responsible for the use of the aircraft with the permission of the named insured. The "Insured" is not defined for Coverage C purposes. Coverage C states that the insurer obligates itself
"To pay for all loss of or damage to the aircraft (a) while not in flight and (b) if specified as `Including In Flight' in the declarations, while in flight, including disappearance in the event the aircraft is not reported or located within sixty (60) days after take-off."[4]
When Coverage C is construed with Exclusions (f), (g), and (h), and Item 3 of the Declarations, and notwithstanding Item 7 of the Declarations page, it is clear that the aircraft is insured against loss or damage which occurs as a result of its being flown by a thief or a person, whether or not a properly licensed pilot, who does not have the permission of the named insured to fly the airplane, unless that person holds under a bailment, lease or similar undertaking.
The policy itself states that it is intended to conform to state law. Conditions, par. 21. See CC Arts. 1945-1967; LRS 22:619(A), 654. See Rodriguez, supra.
Briefly stated, the law is to the effect that the insurer is required to clearly express exclusions to its insuring obligations and that any doubt or ambiguity is to be resolved against the insurer, against forfeiture, and in favor of what reason and probability dictate was intended by the parties with respect to coverage.
Whether a statement made by the insured in the negotiation of an insurance contract (in the application or in the declarations page) is labeled as a representation or as a warranty, the falsity of such a statement shall not be deemed material and shall not defeat coverage, unless it is shown that the false statement was made with the intent to deceive. LRS 22:619(A). The burden of proving this rests with the insurer. See Weeser v. Provident Mutual Life Insurance Co., 322 So.2d 230 (La.App. 4th Cir. 1975), writ refused.
In Indiana Lumbermens Mutual Insurance Co. v. Russell, 243 La. 189, 142 So.2d 391 (1962), it was contended that because a second automobile owned by the named insured was not described in the declarations page which had an entry blank for a second automobile and that because no entries were made in the premium column on the declarations page showing that a premium was payable on a second automobile, coverageotherwise clearly provided in the policy provisionsshould be limited to the one automobile described in the declarations which was the only vehicle the insured intended to insure and paid a premium to insure. This court answered:
"The flaw in counsel's contention, we think, is that it would require that we amend the coverage clause of the contract to conform with the representations or declarations of the insured so as to supply the true intent of the parties. But, in the absence of fraud, we are not *233 permitted to give this relief. For the insuring clause, being free from any ambiguity, is the law between the parties and must be enforced as written. The fact that the declaration of the insured is in conflict with the coverage clause does not, of itself, lessen the coverage given under the policy or justify modification by the Court. Nor is the policy to be voided by reason of a misrepresentation on the part of the insured for, under R.S. 22:619 subd. A, it is provided ` * * * no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it from attaching, unless the misrepresentation or warranty is made with the intent to deceive.' (Italics ours)." 142 So.2d at p. 394 (Emphasis supplied)
In Rodriguez, supra, this court observed:
"Due to the increasing complexity of insurance policies and to the greater danger of overreaching by insurerstheir gaining an unconscionable advantage by the use of complex policy provisions concerning facts that the untutored purchaser would be surprised to find relevant to his insurance coverage,'many states, including Louisiana, enacted `anti-technical' statutes designed to preclude denial of coverage through the assertion of defenses not materially related to the risk." 358 So.2d at p. 1240
LRS 22:692, which relates to policies of fire insurance, is not the only statute expressive of the policy of this state against forfeiture of insurance coverage. The provisions of LRS 22:619(A) and (B) also express this policy and should be categorized with section 692 as anti-technical statutes. This Court has not been hesitant in implementing this statutory policy and has liberally applied these statutes in many cases to benefit the insured. For instance, in Rodriguez, section 692 was extended to apply to a policy other than strictly a fire policy which covered a fire loss. See also Lee v. Travelers Fire Ins. Co., 219 La. 587, 53 So.2d 692 (1951) and Taylor v. Audubon Ins. Co., 357 So.2d 912 (La.App. 4th Cir. 1978), writ refused.
With the exception of a 3" line marked "company use only" which contains about 25 numbers and three letters, the declarations page attached to the policy contains in the largest part, information which could only have been obtained from the named insured, who is the insured, the aircraft, the pilot, the lienholder, and the purpose for which the aircraft will be used. Some policy provisions directly relate to some declarations. Besides those mentioned, compare Declarations Item 6 with Insuring Agreement par. VIII. Coverage C relates directly to Item 3 of the Declarations. Nothing, however, in the policy itself, affording and excluding Coverage C, directly relates to Item 7 of the Declarations. The definition of insured for Coverage A relates to Item 7, but does not exclude coverage to a qualified certified pilot who flies the aircraft with the permission of the named insured.
The direct relationship or the absence of direct relationship of these pertinent provisions of the policy become obvious:
DECLARATIONS:

*234 INSURING AGREEMENTS:
I Coverage ALiability (Including or Excluding Occupants)Bodily Injury and Property Damage. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including mental anguish or death resulting therefrom, sustained by any person, excluding any occupant unless specified as "including occupants" in the declarations, or injury to or destruction of property, including the loss of use thereof, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft.
Ill Definition of Insured. With respect to the insurance for Coverage A the unqualified word "insured" includes the named insured and also includes any person while using the aircraft and any person or organization legally responsible for the use thereof, provided the actual use of the aircraft is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply:
(a) to any person or organization, or to any agent or employee thereof, engaged in the manufacturing of aircraft, aircraft engines or aircraft accessories, or operating an aircraft repair shop, airport, hangar or aircraft sales agency, with respect to any occurrence arising out of the manufacture or the operation thereof;
(b) to any employee with respect to bodily injury, sickness, disease or death of another employee of the same employer, injured in the course of such employment;
(c) with respect to bodily injury, sickness, disease or death of (1) a spouse, parent or child of such person or (2) a named insured;
(d) to any person receiving instruction, either dual or solo, unless specified in Item 7(a) of the declarations.
Coverage CAll Risks (Including or Excluding In Flight). To pay for all loss of or damage to the aircraft (a) while not in flight and (b) if specified as "Including In Flight" in the declarations, while in flight, including disappearance in the event the aircraft is not reported or located within sixty (60) days after take-off.
DEFINITIONS:
3. In Flight. The term "in flight" means the time commencing when the aircraft moves forward in attempting to take-off and continuing thereafter until it has completed its landing run.
EXCLUSIONS:
This policy does not apply:
(f) Under Coverage C to loss or damage
(3) due to conversion, embezzlement or secretion by any person in possession of the aircraft under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance;
(g) Under Coverages A, B and C to any aircraft, while in flight,
(1) not bearing a valid and currently effective "Standard" Airworthiness Category Certificate issued by the Federal Aviation Agency, or
(2) operated by a Student Pilot carrying passenger(s):
CONDITIONS:
22. DeclarationsAll Coverages
By acceptance of this policy the named insured agrees that the statements in the application and declarations are his representations and agreements, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its representatives relating to this insurance.
*235 The term approved pilot does not appear anywhere in the policy as limiting coverage. It only appears as a heading to Declarations Item 7. If it be assumed that Item 7 is an exclusion, the language of Item 7 does not limit its effect to excluding Coverage C crash loss, but to all other coverages A and C when the loss, whether fire, theft, personal injury to a passenger or whatever, occurs when the aircraft is being piloted by someone not named in the declarations. At best, when Item 7 is construed as an exclusion with the whole of the contract, the contract becomes extremely ambiguous.
In the light of the principles mentioned and of the established state policy, *236 we find that Item 7 of the declarations is not an exclusion, but is a statement by the insured made in the negotiation of the contract, that the only pilot who would be flying the aircraft was Kirkpatrick and that he possessed the proper FAA certification. This statement, however false it may have been, is not to be considered Material to the risk and is not to avoid the coverage afforded, unless it was made with the intent to deceive. LRS 22:619(A).
This record indicates not only no deceptive intent on the part of the insured, but establishes to the contrary, that the business insureds who own aircraft, as in this particular experience of the insurer, do change or add pilot-employees during the policy period. Avemco's underwriter testified that businesses who own airplanes and their respective pilots were an impatient lot and usually used the telephone to inform him (the insurer) of who was flying what airplane.
Even assuming then that the insured's declaration that only Kirkpatrick would be flying the aircraft is material to the risk the insurer accepted, the contract expressly and impliedly contemplates that as the hazard might increase, the insured or lienholder-loss payee would pay additional premiums. See AEE-11 endorsement. Section 619(A) states, however, that such a statement shall not be deemed material and shall not avoid the policy unless the statement is made with intent to deceive.
Coverage in these circumstances is clearly provided in Coverage C of the policy. The aircraft is insured against loss or damage while in flight. This coverage was obtained by the insured and agreed to by the insurer upon the insured declaring that the aircraft would be piloted by a named pilot who had the qualifications contemplated by both parties. It is shown that in practice, the named pilot was changed or that other pilots were named from time to time. In each instance, according to our understanding of the insurer's experience, the crucial question by the insurer was the pilot's qualifications, and not his or her name. The question was not from the insured to the insurer, "Will you allow this pilot to fly the aircraft?", but from the insurer to the insured, "Does the man have the proper certificates to fly the aircraft?" Neither the inadvertent failure of the insured to notify the insurer before the crash that Harry Roth was flying the aircraft, nor the additional fact that Harry Roth had received a much earlier citation for a crash, avoids coverage under the circumstances. Harry Roth had the proper qualifications. The effect of the insured's failure to declare a risk during the term of the policy is similar to the effect of the insured's failure to declare a risk during negotiation. It is legally unimportant and not material to the risk unless the failure to declare was done with the intent to deceive. LRS 22:619(A). The fact that a declaration of the insured is in conflict with the coverage clause of the policy does not, of itself, lessen the coverage given under the policy. Russell, supra. The fact that additional premiums might be owed by the insured does not affect coverage. See LeJeune, Couch, supra.
The judgment of the Court of Appeal is reversed and the judgment of the District Court is reinstated and is made the judgment of this court at the cost of respondent.
SUMMERS, C. J., dissents for the reasons assigned by DENNIS, J.
MARCUS, J., dissents, adhering to the original opinion of this court.
DENNIS, J., dissents and assigns reasons.

APPENDIX

"AIRCRAFT POLICY
"[Avemco] agrees with the insured ... in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all of the terms of this policy:

"INSURING AGREEMENTS
"I CoverageLiability ... Bodily Injury and Property Damage. * * *
"Coverage BMedical Payments. * * *
*237 "Coverage CAll Risks ... To pay for all loss of or damage to the aircraft ... while in flight, including disappearance in the event the aircraft is not reported or located within sixty (60) days after take-off.
"II Defense, Settlement, Supplementary Payments. * * *
"III Definition of Insured. With respect to the insurance for coverage A, the unqualified word `insured' includes the named insured and also includes any person while using the aircraft and any person or organization legally responsible for the use thereof, provided the actual use of the aircraft is by the named insured or with [the named insured's] permission. * * *
"IV Use of Other Aircraft. * * *
"V Temporary Use of Substitute Aircraft. * * *
"VI Automatic Insurance for Newly Acquired Aircraft. If the named insured who is owner of the aircraft, shall acquire ownership of another fixed wing aircraft and so notifies the company within thirty (30) days following the date of its delivery to him and if the company insures all aircraft owned by the named insured at such delivery date, such insurance as is afforded by this policy also applies to such other aircraft as of such delivery date ... with respect to Coverage C, only to the extent of the actual cost of the aircraft to the named insured, but not exceeding the highest limit of liability provided for any described aircraft.
"In the event a particular coverage is not provided for any other owned aircraft, the company shall not be deemed to insure all aircraft owned by the named insured in respect to said coverage. The insurance with respect to the newly acquired aircraft does not apply to any loss against which the named insured has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired aircraft.
"VII Two Or More Aircraft. * * *
"VIII Policy Period, Territory, Purpose of Use. * * *

"EXCLUSIONS
"This policy does not apply: * * *
"(f) Under Coverage C, to loss or damage
"(1) to the aircraft which is due and confined to wear and tear, deterioration, freezing, mechanical or electrical breakdown or failure, unless such loss or damage is the result of other loss or damage covered by this policy,
"(2) while the aircraft is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy, or if the interest of the named insured becomes other than owner, or as stated in the declarations,
"(3) due to conversion, embezzlement or secretion by any person in possession of the aircraft under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance;
"(g) Under Coverages A, B and C to any aircraft, while in flight, (1) not bearing a valid and currently effective `Standard' Airworthiness Category Certificate issued by the Federal Aviation Agency, or (2) operated by a Student Pilot carrying passenger(s);
"(h) Under Coverages A, B and C to occurrences, accidents or losses due to (1) capture, seizure, arrest, restraint or detention, or the consequences thereof or any attempt thereat, or any taking of the aircraft or any loss or damage thereof by any Government or governmental authority or agent (whether secret or otherwise) or by any military, navel, or usurped power, .

"DEFINITIONS
* * * * * *
"3. In Flight. The term `in flight' means the time commencing when the aircraft moves forward in attempting to take-off and continuing thereafter until it has completed its landing run.
* * * * * *

*238 "DECLARATIONS
"Item 1. Named Insured and Address * * *
"Item 2. Policy Period: * * *
"Item 3. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all of the terms of the policy having reference thereto.
 Liability . . .
"A Bodily Injury & Property Damage . . . [premium
 shown]
"B Medical Payments . . . [premium not shown]
"C All Risks (including In Flight) . . . [premium
 shown]
"ENDORSEMENTS AER-1, AEE-11 . . . [premium
 shown]
"Item 4. The named insured is a (n) *() whose business is *(1) Individual, (C) Corporation, (P) Partnership, (O) Other
"Item 5. AIRCRAFT * * * [described]
"Item 6. PURPOSES: This policy applies to any use of the aircraft except (a) instruction of any person not specified in Item 7(a) below or (b) any use for which a charge is made to others or while the aircraft is rented or leased for a consideration.
"Item 7. [quoted in body of opinion]
"Item 8. Any loss under Coverage C is payable as interest may appear to the named insured and [lienholder named] * *
"Item 9. * * *

"[AER-1] ENDORSEMENT

"GUARANTEED RENEWABLE
* * * * * *
"This guarantee, however, terminates in the event that
"A. The Named Insured fails to discharge when due any of his obligations in connection with the payment of premium for this policy or any installment thereof
"B. (1) The insured aircraft does not maintain a standard airworthiness certificate;
"(2) During the guarantee period, any pilot named in the policy,
"(a) Receives any Pilot's Certificate suspension or revocation;
"(b) Does not maintain a valid Medical Certificate;
"(c) Who is a Student Pilot, does not obtain a Private Pilot's Certificate within one year after being named in the policy.
* * * * * *

"[AEE-11] BREACH OF WARRANTY ENDORSEMENT
* * * * * *
"Provided also, that the lienholder shall notify the company of any change of ownership or increase of hazard which shall come to the knowledge of said lienholder and, unless permitted by this policy, it shall be noted thereon and the lienholder shall, on demand, pay the premium for this increased hazard for the term of the use thereof; otherwise this policy shall be null and void.
* * * * * *

"CONDITIONS
"1. Limits of LiabilityCoverage A * * "Coverage B * * *
"2. Severability of InterestCoverage A * * *
"3. Action Against CompanyCoverage A * * * "Coverage B * * *
"4. Financial Responsibility LawsCoverage A * * *
"5. Assault and BatteryCoverage A * * *
"6. Medical Reports' Proof and Payment of ClaimCoverage B * * *
"7. Limit of Liability; Settlement Options; No AbandonmentCoverage C
"The limit of the company's liability for loss shall not exceed the applicable limit of liability stated in the declarations, or, in the case of partial loss or damage to the aircraft, what it would cost to repair the aircraft *239 or replace parts thereof with others of like kind and quality. * * *
"8. Insured's Duties When Loss Occurs Coverage C * * *
"9. AppraisalCoverage C * * *
"10. Payment for Loss; Action Against CompanyCoverage C * * *
"11. Rights Against Third PartiesCoverage C * * *
"12. Automatic ReinstatementCoverage C * * *
"13. Assistance and Cooperation of the InsuredCoverages A and C * * *
"14. SubrogationCoverages A and C * * *
"15. Other InsuranceCoverages A and C * * * Coverage B * * *
"16. NoticeAll Coverages
"In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, ... shall be given by or for the insured to the company ... as soon as practicable. * * *
"17. ChangesAll Coverages
"Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by a duly authorized representative of the company.
"18. AssignmentAll Coverages
"Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the named insured shall die, this policy shall cover (a) his legal representative as named insured... and (b) any person having proper temporary custody of the aircraft, as an insured, until the appointment and qualification of such legal representative;.
"19. CancellationAll Coverages * * *
"20. Cancellation for Non-Payment of Installment PremiumAll Coverages * * *
"21. Terms of Policy Conformed to StatuteAll Coverages * * *
"22. DeclarationsAll Coverages
"By acceptance of this policy the named insured agrees that the statements in the application and declarations are his representations and agreements, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its representatives relating to this insurance.
* * * * * *
DENNIS, Justice, dissenting.
I respectfully dissent from the majority opinion on rehearing, because it is based on two erroneous premises.
The exclusion which provides that the policy applies when the aircraft is in flight, only while being operated by one of the named pilots, cannot be a warranty or a representation, as the majority asserts. In addition to the reasons stated in our original opinion, the provision cannot be a representation or a warranty because it is insusceptible of being a false statement. The provision simply says that the policy applies only while being operated by one of the named pilots.
There is no ambiguity in the provisions of the policy insofar as they are relevant or material to this case.
In the declarations contained on the first page of the policy, the parties agreed that the policy "applies when the aircraft is in flight, only while being operated by one of the" named pilots. On the second page, the parties agreed that the company would "pay for all loss or damage to the aircraft (a) while not in flight and (b) if specified as `Including In-Flight' in the declarations, while in flight, ...." On the last page of the policy the parties agreed as follows:
"By acceptance of this policy the named insured agrees that the statements in the application and declarations *240 are his representations and agreements, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its representatives relating to this insurance."
Thus, the parties clearly and unambiguously agreed that the property damage coverage of the policy would be in effect during flight only if the plane was piloted by a named operator. The parties also specifically agreed to be bound by their agreements contained in the declarations.
If I understand the majority opinion on rehearing correctly, it ultimately depends upon an arguable ambiguity when the named pilot exclusion is construed with the liability coverage provisions of the policy. However, this suit is not based upon the liability coverage of the policy. It does not seem to me to be fair, just or proper contractual interpretation, therefore, to decide the case on the basis of an ambiguity that is not relevant to a genuine issue in the litigation.
NOTES
[1] The court of appeal also found that Avemco was not estopped from raising the policy provision in defense to plaintiff's suit. Although this was not the reason we granted writ of certiorari in this case, we have reviewed the record and find that the factual determination made by the court of appeal on this issue was correct.
[2] Although Roth possessed the minimum qualifications of a pilot under the terms of the policy provision at issue, at trial Roth testified that he had been issued an F.A.A. citation in connection with a prior plane crash, and that he was unable to remember the ground for the citation. Wes Coble, an underwriter for Avemco, testified that Avemco would not accept pilots who had committed certain F.A.A. violations, and that, even if accepted, a higher premium might be charged.
[3] It is not clear from the record who was authorized by Benton to pilot the insured plane. Mrs. Samaha, Benton's representative, testified that Billy Kirkpatrick was hired as a pilot in January, 1978, and she indicated that he was still employed as a pilot at the time of the trial. There is nothing to indicate that Roth, a salesman, was employed to replace Kirkpatrick, who was, in Mrs. Samaha's words "strictly a pilot." It is clear that Mrs. Samaha did not realize that it was necessary to list each person who was operating the aircraft; and it appears likely that several individuals may have been operating the aircraft from time to time even though they were not listed in the policy.
[1] Justice Fred A. Blanche, Jr., who was on the panel of the 1st Circuit Court of Appeal when the appeal of this case was decided, did not participate in these proceedings. Judge Charles A. Marvin, of the 2d Circuit Court of Appeal, was assigned as Justice Ad Hoc on rehearing.
[2] LRS 22:619(A) reads:

"Except as provided in Sub-section B of this Section and R.S. 22:692, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive."
[3] Coble:

"... [T]he addition or deletion of a pilot or another type change could increase the risk ... and therefore involve an additional premium...."
"[If] Mr. Roth had come to us with the same kind of experience as the preceding pilot ... and everything else being equal, there wouldn't have been any increased premium ..."
"... [I]t would have to be a pretty bad situation for us not to accept a man..."
Roth's prior accident did not result in his license being suspended or revoked. Whether Roth would have been an additional pilot or a substitute pilot is of no moment. Under either situation, an increased premium might have resulted. The insurance contract does not refer to pilots as being additional pilots or as being substitute pilots. It simply refers to pilots and student pilots (Item 7(A) declarations), and to persons (Insuring Agreement III) and to the aircraft as being insured (Insuring Agreement I, Coverage C).
[4] The Coverages A and C directly relate to Item 3 of the declarations quoted infra and in the appendix.