# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-31077

United States Court of Appeals
Fifth Circuit

**FILED**

October 27, 2014

Lyle W. Cayce
Clerk

BRIDGEFIELD CASUALTY INSURANCE COMPANY,

Plaintiff - Appellee

v.

RIVER OAKS MANAGEMENT, INCORPORATED,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-2336

Before KING, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:*

River Oaks Management, Inc. ("River Oaks") appeals the district court's grant of a declaratory judgment that its workers' compensation policy issued by Bridgefield Casualty Insurance Company ("Bridgefield") did not provide coverage for an employee accident that occurred in Mississippi because River Oaks did not notify Bridgefield of its operations in that state. Because there is a genuine issue of material fact as to whether Bridgefield waived its right to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-31077

deny coverage for River Oaks' failure to comply with the notice requirement, we REVERSE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.

I.

River Oaks provides management services to apartment complexes. From its inception in 1988 until the fall of 2011, River Oaks operated exclusively in Louisiana. From January 1, 2005, through January 1, 2013, Bridgefield provided River Oaks with workers' compensation insurance under policy number 198-03829. Although in its inaugural year the policy covered work performed only in Louisiana, since 2006 the policy provided "Other States" coverage for any River Oaks operations in nine additional states, including Mississippi. Louisiana is the only state listed in Item 3.A. of the policy's Information Page, and the nine additional states are listed in Item 3.C. Item 3.C. provides that Part Three of the policy applies to these states. Part Three, in turn, reads:

PART THREE
OTHER STATES INSURANCE

A. How This Insurance Applies

> 1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.
>
> 2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.
>
> 3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.
>
> 4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page,

2

No. 13-31077

coverage will not be afforded for that state unless we are notified within thirty days.

B. Notice

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

On September 30, 2011, and December 15, 2011, River Oaks contracted to provide apartment management services for the Madison Apartments and Andrew Apartments, respectively, in Biloxi, Mississippi.[1] In mid-November of 2011, Bridgefield issued River Oaks a renewal policy for the period January 1, 2012, through January 1, 2013. The policy documents listed only Louisiana workplaces and estimated a premium total based only on Louisiana payroll. River Oaks did not inform Bridgefield of its operations in Mississippi.

In March of 2012, Bridgefield's auditor conducted an annual year-end audit of River Oaks to determine the final premium for the 2011 policy period and estimate monthly premiums for the 2012 period. River Oaks alleges that it produced all payroll records to the auditor, including those pertaining to its employees in Mississippi. River Oaks further alleges that the final premium for the 2011 policy and estimated premiums for the 2012 policy were computed from a gross payroll that included the wages of River Oaks' employees in both Louisiana and Mississippi.[2]

---

[1] River Oaks also entered into a contract to perform work for the Compass Pointe Apartments in Mississippi on January 27, 2012.

[2] Bridgefield does not explicitly deny River Oaks' assertion on appeal that it is "undisputed" that River Oaks produced Mississippi payroll records to Bridgefield's auditor and that the gross payroll from both states was used to calculate the final premium for 2011 and estimated premiums for 2012. In briefing in front of the district court, Bridgefield argued that "[t]he audit did not reveal that River Oaks . . . had begun work in Mississippi," and that it "did not accept premiums for the January 1, 2012—January 1, 2013 policy period based on Mississippi payroll." The district court found there was a genuine dispute as to whether Bridgefield had knowledge of River Oaks' Mississippi operations but held it was not material. On appeal, Bridgefield has not contested that there is a genuine factual dispute on this issue and we agree that one exists. Because the issue is not properly before us, we leave the fact-finding to the district court on remand.

No. 13-31077

On June 8, 2012, a River Oaks employee suffered severe injuries after falling from a ladder while providing maintenance services at the Madison Apartment complex in Biloxi. River Oaks filed a claim with Bridgefield for coverage under its workers' compensation policy and Bridgefield issued a reservation of rights letter. Bridgefield filed this lawsuit on September 21, 2012, seeking a declaratory judgment that its policy does not provide coverage for the Mississippi accident because River Oaks was performing work in Mississippi prior to the effective date of the 2012 policy but failed to notify Bridgefield of its Mississippi operations, as is required to trigger Mississippi coverage under the policy. Both parties moved for summary judgment. The district court held that River Oaks' operations at the Madison Apartment were not covered by its workers' compensation policy because it had not complied with the policy's notification provision. The court granted summary judgment in favor of Bridgefield and denied River Oaks' motion. River Oaks timely appealed.

## II.

We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). Summary judgment is appropriate only if, interpreting all facts and drawing all reasonable inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Ion*, 731 F.3d at 389. The interpretation of an insurance policy is a question of law that we also review de novo. *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003). Because this diversity suit was brought in Louisiana and the policy was issued in Louisiana, we apply Louisiana substantive law to interpret the policy. *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 659 (5th Cir. 2005). The district

4

No. 13-31077

court's determination of state law is, once again, reviewed de novo. *Am. Int'l Specialty*, 352 F.3d at 260. In interpreting Louisiana law, we are bound by a prior interpretation of this court so long as it has not been superseded by Louisiana case law or statute. *Id.* at 270 n.4; *Lamar*, 396 F.3d at 663 n.8.

### III.

River Oaks argues that its failure to provide notice to Bridgefield of its Mississippi operations does not preclude coverage for the accident because (1) the notice provision is unenforceable and (2) even if it is otherwise enforceable, Bridgefield has waived its right to deny coverage based on the notice provision.

### A.

### 1.

River Oaks first claims that the notice provision is ineffective because it is ambiguous about when and how to give notice of operations in other states, as well as the consequences of failure to give notice. *See La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94); 630 So. 2d 759, 764 (ambiguity in an insurance contract is construed in favor of the insured). This claim is largely premised on the policy's disparate notice requirements for covered out-of-state work that is ongoing on the effective date of the policy, as opposed to work commenced after that date. Pursuant to section III.A.4., River Oaks was required to inform Bridgefield if it "ha[d] work" in a covered state outside of Louisiana when the policy began (January 1, 2012); this notice had to be provided within thirty days (January 31, 2012) or "coverage w[ould] not be afforded for that state." There is a separate notice provision, III.B., which required River Oaks to inform Bridgefield "at once" if it began work in one of those covered states.

River Oaks argues that, because section III.B. does not specify a penalty for failing to notify Bridgefield of out-of-state work, Bridgefield cannot deny coverage for River Oaks' failure to inform Bridgefield of its Mississippi

5

operations. But Bridgefield is not disclaiming coverage for River Oaks' failure to notify it of Mississippi operations that began *after* the effective date of the policy, in which case the more general section III.B. would apply. Section III.A.4. clearly states that River Oaks must notify Bridgefield within thirty days of the effective date of the policy if it is working in a covered state outside of Louisiana as of the effective date, otherwise coverage will not extend to operations in that state. River Oaks began working in Mississippi in September of 2011 and was thus required to notify Bridgefield of this work by January 31, 2012. Under the plain language of section III.A.4., River Oaks forfeited coverage for its Mississippi operations by failing to provide this notice.

River Oaks further contends that its work in Mississippi does not fall within section III.A.4. because its policy was "effective" when it was first issued in 2005. This argument is meritless. "Renewal" of an insurance policy "means the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer . . . or the issuance and delivery of . . . notice extending the term of a policy beyond its policy period or term." La. Rev. Stat. Ann. § 22:1266(A)(5). Here, each of River Oaks' policies from 2005 were *replaced*, not extended, by the succeeding policy. Moreover, the 2012 policy explicitly states that it takes effect on January 1, 2012, not, as River Oaks seems to argue, sometime in 2005.

River Oaks next argues that, because it began work in Mississippi after the effective date of the 2011 policy, it was not obligated to inform Bridgefield when the 2012 policy began. Such an interpretation would virtually nullify section III.A.4. altogether: any work that is underway on the effective date of a policy almost necessarily begins the previous policy period. If River Oaks had ceased work in Mississippi before January 1, 2012, it would not have been subject to forfeiture under section III.A.4. Because River Oaks' operations

6

No. 13-31077

continued into the next policy period, it was required to inform Bridgefield within thirty days of the policy taking effect.[3]

2.

River Oaks next argues that, in addition to non-compliance with the notice provision, Bridgefield must demonstrate prejudice to enforce its denial-of-coverage penalty, and the district court therefore erred in denying its discovery request on this issue. It is true that "[t]he rule in Louisiana is that where the requirement of timely notice is not an express condition precedent, the insurer must demonstrate that it was sufficiently prejudiced by the insured's late notice." *Peavey Co. v. Zurich Ins. Co.*, 971 F.2d 1168, 1173 (5th Cir. 1992). But this court has repeatedly held that "Louisiana law enforces provisions of insurance contracts which require notice as a condition precedent without also requiring the insurer to make a particular showing of prejudice." *MGIC Indem. Corp. v. Cent. Bank of Monroe, La.*, 838 F.2d 1382, 1386 (5th Cir. 1988); *see also, e.g.*, *In re Settoon Towing, L.L.C.*, 720 F.3d 268, 277 (5th Cir. 2013) (holding that, where policy holder is a sophisticated business and "immediate notice is an express condition precedent to coverage in the main body of the policy, failure to comply with the provision precludes coverage and prejudice need not enter the calculation" (quoting *Joslyn Mfg. Co. v. Liberty Mut. Ins. Co.*, 30 F.3d 630, 633-34 (5th Cir. 1994) (internal quotation marks omitted)).

---

[3] River Oaks also points out that section III.A.4. does not explicitly state how notice is to be provided. Insofar as River Oaks contends that its submission of payroll documents reflecting Mississippi operations constituted notice within the meaning of the policy, such "notice" was not provided until March of 2012, months after the deadline of January 31. We note for clarity, however, that whether River Oaks' auditing documents satisfied the notice requirement under the terms of the policy is distinct from the issue of whether those documents were sufficient to place Bridgefield on notice that River Oaks was operating in Mississippi, resulting in a waiver of Bridgefield's right to deny coverage under section III.A.4.

7

No. 13-31077

Although the exact phrase "condition precedent" is not used, the policy plainly states that "coverage will not be afforded . . . unless we are notified within thirty days." Because it is clear that notice is a condition precedent to coverage under the policy, Bridgefield need not demonstrate prejudice to deny coverage. *See Settoon Towing*, 720 F.3d at 278 (holding that precise phrase "condition precedent" is not necessary where language clearly establishes that notice is a condition precedent to recovery and insured is a sophisticated business). As River Oaks did not comply with the thirty-day notice requirement, the district court did not err in denying River Oaks' discovery motion on the issue of prejudice. *See id.* (holding that where a policy contained a notice provision requiring insured to notify insurer within thirty days of an occurrence as a condition precedent to recovery, notification thirty-seven days after the occurrence was ineffective).

3.

River Oaks finally alleges that the notification provision is unenforceable under two of Louisiana's "anti-technical" statutes, La. Rev. Stat. Ann. §§ 22:860 and 22:875.[4]

La. Rev. Stat. Ann. § 22:875 states that "[i]f any breach of a . . . condition in any insurance contract occurs prior to a loss under the contract, such breach shall not void the contract nor allow the insurer to avoid liability, unless the breach is material and exists at the time of the loss." As just discussed, this court has interpreted Louisiana law to hold that failure to comply with a notice requirement that is a condition precedent to coverage precludes coverage, at least where the insured is a sophisticated entity. "The common law 'condition

---

[4] Anti-technical statues were a legislative reaction to the increasing complexity of insurance policies and the danger that insurers could use complex policy provisions to disclaim coverage of an unsophisticated consumer. *Rodriguez v. Nw. Nat'l Ins. Co.*, 358 So. 2d 1237, 1240 (La. 1978). The statutes are "designed to preclude denial of coverage through the assertion of defenses not materially related to the risk." *Id.*

precedent' is analogous to the civilian 'suspensive condition.'" *S. States Masonry, Inc. v. J.A. Jones Constr. Co.*, 507 So. 2d 198, 204 n.15 (La. 1987). "[W]hen an obligation is subject to a suspensive condition, *the very existence of the obligation depends upon the occurrence of the event*." *Cahn Elec. Co. v. Robert E. McKee, Inc.*, 490 So. 2d 647, 652 (La. Ct. App. 1986) (emphasis in original). Bridgefield denied coverage for River Oaks' Mississippi operations because, as a consequence of River Oaks' failure to comply with the notice provision, its obligation to provide coverage was never triggered. Accordingly, § 22:875's protection for a non-material breach of contract is inapplicable here.

La. Rev. Stat. Ann. § 22:860(A) provides that "no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive." Relying on *Benton Casing Serv., Inc. v. Avemco Ins. Co.*, 379 So. 2d 225 (La. 1979), River Oaks argues that its failure to inform Bridgefield of its Mississippi operations was an unintentional misrepresentation, and cannot form the basis for the denial of coverage. In *Benton*, the Louisiana Supreme Court held that an aircraft insurance policy provision that stated the policy applied only when the plane was operated by a listed pilot constituted a representation of who would be flying the airplane, not an exclusion of all other non-listed pilots from coverage. 379 So. 2d at 236. Because the insured's omission of the name of the pilot who crashed the plane was "a statement by the insured made in the negotiation of the contract," and was not made with the intent to deceive, the insurer was prevented from denying coverage. *Id.*

This court has previously explained that the *Benton* court's characterization of the named pilot endorsement as a representation was based on three principal factors.

9

First, the provision appeared in the "Declarations" section of the policy rather than in the "Exclusions" section, and none of the exclusions specifically referred to it. Second, if the endorsement were considered an exclusion, it would have rendered the policy ambiguous because it was not on its face limited to particular types of coverage and thus would have contradicted the policy's coverage of loss when the plane was flown by a thief. And third, Benton's plane was in fact flown by a certified pilot but one whose name had not been listed on the endorsement, and the insurance company routinely allowed Benton to add certified pilots to those listed on the endorsement by simply informing the company (and possibly paying a higher premium).

*Compass Ins. Co. v. Vanguard Ins. Co.*, 649 F.2d 331, 335 (5th Cir. 1981); *see also Graham v. Milky Way Barge, Inc.*, 824 F.2d 376, 383 (5th Cir. 1987) (applying these three factors and concluding that endorsement in insurance policy was an exclusion).

Here, the notice provision is included in Part Three of the policy, which exclusively sets out the coverage conditions for the covered states outside of Louisiana.  The notice provision does not create any ambiguity because, by its explicit terms, it applies only where operations in a covered additional state are underway on the effective date of the policy.  Finally, unlike in *Benton*, there was not a history of Bridgefield's acquiescence to violations of the provision by River Oaks.  It is clear that the policy's notice requirement is an exclusion and not merely a representation that River Oaks would notify Bridgefield of work in other states or that River Oaks did not have work in other states.  Both this court and Louisiana courts have consistently held that § 860 does not apply to a policy exclusion.  *See, e.g., Prof'l Managers, Inc. v. Fawer, Brian, Hady & Zatkis*, 799 F.2d 218, 224-225 (5th Cir. 1986) (holding that § 860 did not cover provision in liability insurance policy that stated coverage would not apply if insured had knowledge of circumstance that could result in claim on the effective date of the policy); *Stream v. Aetna Cas. & Sur. Co.*, 608 So. 2d 260, 262-63 (La. Ct. App. 1992) (same, noting that insurer was

not seeking to void the policy, but only to exclude coverage for certain claims). Because the notice provision is "patently a limitation on coverage," *Prof'l Managers*, 799 F.2d at 224-25, Bridgefield need not show that River Oaks' omission was intended to deceive. Accordingly, River Oaks cannot avail itself of either anti-technical statute.

## B.

River Oaks next argues that, even if the notice requirement is valid, Bridgefield waived its right to enforce the coverage exclusion by accepting premiums from River Oaks based, in part, on its Mississippi payroll. The district court stated that "there is a genuine dispute of fact as to whether Bridgefield received information at the March audit from which it could conclude that River Oaks was operating in Mississippi." The court, however, held that the dispute was not material because "knowledge that River Oaks was doing work in Mississippi would not have given Bridgefield the right to cancel the policy." Because an insurer may waive any policy provision—not just a provision permitting it to void the entire policy—the district court erred by granting summary judgment to Bridgefield.

"Waiver is usually defined as the intentional relinquishment of a known power or privilege." *Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So. 2d 1371, 1373 (La. 1987) (Dennis, J.) "Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Id.* at 1374. Contrary to the district court's holding, "*[a] waiver may apply to any provision of an insurance contract*, even though this may have the effect of bringing within coverage risks originally excluded or not covered." *Steptore v. Masco Constr. Co.*, 93-2064 (La. 8/18/94); 643 So. 2d 1213, 1216 (Dennis, J.) (emphasis added); *see also Tate*, 508 So. 2d at 1375 (same). An insurer may waive a provision that falls

11

short of granting it the right to cancel the entire policy, such as the exclusion-of-coverage provision at issue here.

The district court correctly concluded that there is a genuine dispute of fact as to whether the March audit provided Bridgefield with knowledge of River Oaks' operations in Mississippi. *See* n.2, *supra.* "[U]nder Louisiana law, the acceptance of premium payments by an insurer after receiving knowledge of facts creating a power of avoidance or privilege of forfeiture constitutes a waiver of such power or privilege." *Home Ins. Co. v. Matthews*, 998 F.2d 305, 309-10 (5th Cir. 1993) (internal quotation marks omitted); *see also Swain v. Life Ins. Co. of La.*, 537 So. 2d 1297, 1300 (La. Ct. App. 1989) (same). Subjective knowledge by the insurer is not required. "It is well established that an insurer is charged with knowledge of the contents of its own policy." *Steptore*, 643 So. 2d at 1216. And "notice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered." *Id.*

As discussed above, the policy does not impose a forfeiture-of-coverage penalty for failure to notify Bridgefield of work outside of Louisiana commenced *after* the effective date of the policy. Accordingly, the purported adjustment of River Oaks' 2011 premiums to include Mississippi payroll does not, on its own, constitute a waiver of the notice provision in the 2011 policy because the notice requirement in section III.A.4. did not apply to River Oaks' Mississippi operations that year, as they began in September, after the effective date of the 2011 coverage. But Bridgefield may have waived its right to deny Mississippi coverage if it accepted those premiums in 2012, after River Oaks forfeited coverage for its Mississippi operations by failing to inform Bridgefield within thirty days that it was working in Mississippi on the

No. 13-31077

effective date of the policy.[5] If Bridgefield accepted 2012 premiums with notice that those payments included River Oaks' Mississippi payroll, from which it could have determined that River Oaks was operating in Mississippi on the effective date of the 2012 policy, Bridgefield waived the notice provision and its right to deny coverage for the accident on that basis. We accordingly REVERSE the district court's grant of summary judgment and REMAND to the district court to determine whether Bridgefield waived its right to deny coverage for River Oaks' failure to comply with the notice provision, which will require the resolution of genuine factual disputes.

IV.

For the foregoing reasons, we REVERSE the district court's grant of summary judgment in favor of Bridgefield and REMAND for proceedings consistent with this opinion.

---

[5] It is unclear on appeal whether Bridgefield is claiming that it did not accept any premium payments that included Mississippi payroll in 2012, or whether the final premiums for that year were adjusted to exclude Mississippi operations. We note here that, if Bridgefield accepted premiums based on Mississippi payroll in 2012 before the accident in June, it cannot defeat a finding of waiver by refunding the Mississippi portion of the premiums *after* the coverage dispute arose.