ELLIS, Judge.
Plaintiff-appellee filed suit September 16, 1948 to recover damages to his one story brick, standard roof dwelling 'house, claiming them to be the result of a windstorm on September 19, 1947. At that time he was the insured under two fire insurance policies with extended coverage including windstorm. Damages are asked in the sum of $562 with legal interest thereon from date of judicial demand, and 12% damages on the total amount of loss, together with $250 as reasonable attorneys fees under Section 3 of Act 168 of 1908.
Immediately after the storm of 1947 plaintiff made a claim for damages in the amount of $27.50, which was paid by the insurers through two drafts, one of the Providence Washington Insurance Co., dated December 19, 1947 in the amount of $11.79, and the other of the Carolina Insurance Co., dated January 31, 1948 in the amount of $15.71. Upon the reverse of both drafts a release is printed purporting to discharge the companies from all claims and demands by reason of the loss and damage for which the drafts were given.
The insured claims the damages forming the basis of this suit were not discovered by him until he returned from a trip on or about March 5, 1948, when he found the entire inner front wall of 'his home was wet, the floor covered with water, and the entire interior covered with mold and mildew.
An exception of no cause of action and' of vagueness was overruled, and answer was filed, alleging the defense of failure to give notice in accordance with the policies, and estoppel was plead. The exceptions are-not reurged on appeal.
The District Court concluded the damages complained of resulted from the windstorm of 1947 and rendered judgment in favor of plaintiff as prayed for, allowing the 12% penalties and attorneys fees in the amount of $250.
From this judgment the defendants have appealed and contend:
I.
“Plaintiff having submitted proof of loss- and accepted payment in full settlement for the particular windstorm of September 19, 1947, is estopped to claim further damage for the same storm some nine months later.”
II.
“That the insured failed to give notice promptly within the time provided by the policies.”
III.
“That plaintiff has not carried the burden of proof to make out 'his case as to damages suffered, and the amount thereof.”
IV.
“That plaintiff is not entitled to attorneys, fees and penalties.”
I.
Immediately after the storm, which was. a violent one, plaintiff had his roof fixed and his damage amounted to $27.50 which was paid and the provision on the check released the defendant from all claims and demands for loss or damage by windstorm, which occurred September 19', 1947, and on the back of the check above the signature of the plaintiff the amount was accepted in full satisfaction, final settlement and com *407 promise of all claims and demands against the insurance company for such loss.
Testimony shows that subsequent to the storm, up until the latter part of February or first of Manch, 1948, there was hardly any rain, and during the latter part of February the plaintiff went on a trip to Alabama ahd did not return for approximately two weeks or until March 5, 1948, at which time he discovered water pouring down the walls in the front of his house, and he notified the agent of the insurance company, Sims, of the damage.
In 46 Corpus Juris Secundum, Insurance, § 1205, p. 147, it is stated: “A release or a receipt in full executed by reason of fraud or misrepresentation on the part of the insurance company, or by reason of a mistake of fact, or where insured does not intend to release the company, will not bar further recovery by insured.” (Emphasis added.)
See also Lervick v. White Top Cabs, La.App., 10 So.2d 67; Misuraca v. Metropolitan Life Insurance Co., 199 La. 867, 7 So. 2d 167.
The Supreme Court in Harvey v. Richard, 200 La. 97, 7 So.2d 674, 677, at page 677 (4, 5) stated: “The cases holding that estoppels are not favored by our courts are legion in our jurisprudence. Whenever estoppel is pleaded as an element of a cause of action, it must be pleaded specifically, the burden of proving the facts upon which the estoppel is founded, as well as the affirmative showing that he was mislead by the acts and forced to act to his prejudice, resting upon the party invoking the doctrine. Heirs of Wood v. Nicholls 33 La.Ann. 744; Thomas v. Blair, 111 La. 678, 35 So. 811; and Hebert v. Champagne, 144 La. 659, 81 So. 217.”
Applying the jurisprudence to the facts of this cause, it would seem that the plea cannot be sustained, as there is no affirmative showing in the record that the defendants were mislead by any acts of the plaintiff, nor were they forced to act to their prejudice, and plaintiff signed the release and accepted payment through an error of fact.
n:
In 45 C.J.S., Insurance, § 982 (1) d, it is stated: “A default in serving notice or proofs of loss may be excused where the circumstances render strict compliance with the requirement impossible or unreasonable /and the insured has not failed to use due dilligence.”
• In 45 C.J.S., Insurance, § 985 b, it is stated : “The time allowed by an accident policy for giving notice generally begins to run when the particulars or result of an accident are ascertained, where these are not immediately apparent.”
The Supreme Court in Jackson v. State Farm Mut. Automobile Ins. Co., 211 La. 19, 29 So.2d 177, held: “Whether liability insurer is relieved of liability by delay in giving notice of accident depends upon length of. delay, whether claim is made directly by injured person against insurer, when parties first discovered substantial injury had been done or that claim would be made, when injured party discovered existence of insurance and identity of insurer, what prejudice resulted to insurer from delay, good faith of insured and injured person, and existence of special circumstances, especially those indicating fraud or collusion.”
 In the present case, it is shown that plaintiff reported or notified. R. N. Sims, who was agent of both insurers, of his claim when he returned on March 5, 1948 from Alabama, and Sims admitted that he was notified by telephone of the discovery of the damage, which is the basis of 'this suit, in March, 1948; that there was delay on Sim’s part in forwarding notice of loss to the company, and he did not submit the loss until May; and he further stated that he set the date of the claim “as April, due to a general disturbance in that area during that time.” In view of the fact that plaintiff gave notice of this loss as soon as he discovered it, in the absence of fraud or collusion under the jurisprudence cited the insurers cannot successfully deny liability on this ground.
III.
' Of course, this point presents purely a question of fact. It is shown that plaintiff *408 had his entire roof inspected and repaired in 1946 by a carpenter with forty years experience and who had been a roofing man for fifteen or twenty years, and it is the latter’s positive testimony that in 1946 there were no cracks in the opening between the flashing and the roof, and no defects whatsoever in the building after his repairs. This witness again inspected the building or the roof after the damage was discovered on March 5, 1948, and he found the roof in bad shape, the wall cracked, and the flashing between the front wall and the roof loose, and it was his opinion that nothing else could have caused this damage except the windstorm of September 19, 1947, and he also eliminated as a cause of the damage any settling of the foundation as he examined the foundation and found it in perfect condition.
Plaintiff produced other competent witnesses who supported this same theory of the damage.
On the other hand, the defendants produced only one witness, Boudreaux, who stated that in his opinion the damage was not caused by the windstorm. His testimony was attacked on rebuttal by plaintiff and the witness Tassin, both of whom testified positively that this witness had stated to him on one occasion at least that in his opinion the damage was caused by the windstorm. Boudreaux attributes the leaks to the drying out of the mortar between the roof and the wall, and testified that the flashings were not properly applied.
The overwhelming preponderance of the testimony in the record is in favor of the plaintiff, and we also have the judgment of the District Court for plaintiff.
As to the quantum of damages, the District Court took into consideration four estimates of four contractors and averaged them, which amounted to $627, which is above the amount claimed by the plaintiff, viz., $562. The Court then allowed plaintiff to recover the entire sum claimed. The low estimate of the four was $358.75, which was the only one itemized. In the absence of any showing to the contrary by plaintiff, the lowest bidder could repair its premises efficiently and completely. There is no reason why this figure should not be accepted.
IV.
The statute in effect at the time of plaintiff’s loss was Act 168 of 1908, Sec. 3, which specifically states that 12% penalties and reasonable attorneys’ fees shall be allowed only “whenever any lops or damage shall be suffered in this State from fire * * * ” and the insurer fails to pay the amount due under the policy within 60 days after proof of loss. The wording is unambiguous, referring only to non-payment of loss occasioned by fire, and its language cannot be interpreted to include damage by windstorm.
It is, therefore, ordered that the judgment .of the Disriet Court be amended by reducing the amount awarded from $562 to $358.-75 and that it be reversed and set aside insofar as it awards 12% penalties and attorneys fees in the amount of $250, the costs to< be paid by the defendants.