# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 18, 2013

No. 11-31030

Lyle W. Cayce
Clerk

In Re: In the Matter of the Complaint of Settoon Towing, L.L.C., as owner of M/V Cathy M. Settoon, and Barge CTCO 202, their engines, tackle, appurtenances, furniture, etc., for Exoneration from or Limitation of Liability

SETTOON TOWING, L.L.C., as owner of M/V Cathy M. Settoon, and Barge CTCO 202, their engines, tackle, appurtenances, furniture, etc.,

Petitioner

v.

ST. PAUL SURPLUS LINES INSURANCE COMPANY, et al,

Claimants

---

STATE NATIONAL INSURANCE COMPANY,

Plaintiff – Appellant

NEW YORK MARINE & GENERAL INSURANCE COMPANY; FEDERAL INSURANCE COMPANY,

Plaintiffs – Appellees

v.

SETTOON TOWING, L.L.C., a Delaware Limited Liability Company,

Defendant – Third Party Claimant
– Appellant – Appellee

v.

No. 11-31030

ST. PAUL FIRE & MARINE INSURANCE COMPANY,

Third Party Defendant – Appellee

———————————

Appeals from the United States District Court
for the Eastern District of Louisiana

———————————

Before STEWART, Chief Judge, and GARZA and ELROD, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This appeal arises out of an allision between the M/V CATHY M. SETTOON (the "CATHY"), a vessel owned by Settoon Towing, L.L.C. ("Settoon"), and an oil well. Settoon appeals the district court's grant of summary judgment in favor of New York Marine and General Insurance Company ("NYMAGIC"), Federal Insurance Company ("Federal"), and St. Paul Fire & Marine Insurance Company ("St. Paul") (together, the "umbrella insurers"), concluding the umbrella insurers are not liable to Settoon for damages resulting from the allision. State National Insurance Company ("SNIC") cross-appeals the district court's grant of summary judgment in favor of Settoon, finding SNIC liable to Settoon for damages and prejudgment interest resulting from the allision. We AFFIRM the district court's judgment in all respects except for the calculation of prejudgment interest. We REVERSE and REMAND for calculation of prejudgment interest in a manner consistent with this opinion.

No. 11-31030

## I

On January, 20, 2007, the CATHY struck an oil well in Bayou Perot, Louisiana, causing damage to the wellhead and uncontrolled discharge of oil into the water. The captain of the CATHY did not report the allision to the United States Coast Guard or to Settoon. The next day, the captain of the M/V CHERYL SETTOON, another vessel owned by Settoon, saw the oil spill as it passed by the allision site and reported the spill to the Coast Guard and Settoon's management. The Coast Guard conducted an investigation, and the captain of the CATHY initially denied involvement. When the Coast Guard confronted him with a reconstruction of the allision from the CATHY's tracking system on February 23, 2007, thirty-four days after the allision, the captain of the CATHY admitted involvement. Settoon notified its insurers of the event on February 26, 2007, thirty-seven days after the allision.

Three insurance policies belonging to Settoon are at issue in this litigation, all of which provide excess insurance coverage over Settoon's underlying primary policies. SNIC insures the first layer bumbershoot policy ("Bumbershoot 1"), which provides the first $4,000,000 of excess coverage. SNIC sent Settoon a binder for this policy on November 8, 2006, listing the underlying insurance policies and indicating the policy included a "Pollution Liability" endorsement. The binder included a "Conditions" section that stated, "Warranted copies of all underlying policies scheduled in item 5, received within 60 days of attachment." We interpret this as a requirement that Settoon send SNIC the full texts of its underlying policies. The "Conditions" section also stated, "All coverages scheduled to remain in force for the entire term . . . ." The binder stated the insurance policy was effective from November 2, 2006 to November 2, 2007.

No. 11-31030

On December 13, 2006, SNIC contacted Settoon stating several items were needed to issue the policy, including copies of the underlying policies and the premium payment. On December 28, 2006, SNIC contacted Settoon stating SNIC received the premium payment but still required the underlying policies, among other items. On January 10, 2007, SNIC contacted Settoon again stating it required the underlying policies to issue the insurance policy. On January 23, 2007, three days after the allision, SNIC contacted Settoon again stating it needed the underlying policies to issue the insurance policy. On February 7, 2007, SNIC contacted Settoon again stating it needed the underlying policies to issue the policy. SNIC received all the underlying policies by March 1, 2007, and sent Settoon the Bumbershoot 1 policy on March 2, 2007.

Bumbershoot 1 begins by defining the general scope of the agreement in Section I-A, titled "Coverage." In relevant part, the Coverage section reads:

> The Policy shall indemnify the Insured . . . for the following . . . :
>
> 1) All Protection and Indemnity risks covered by the underlying Protection and Indemnity Insurance . . . .
>
> 2) . . . marine collision liabilities . . . .
>
> 3) All other sums which the Insured shall become legally liable to pay as damages on account of . . . b. property damage . . . .

Section III of Bumbershoot 1 is titled "Exclusions." In relevant part, the Exclusions section reads: "This insurance does not apply to . . . xi. Any liability for, or any loss, damage, injury or expense caused by, resulting from or incurred by reason of: . . . f. pollution liability." One of the endorsements attached to the policy is titled "Pollution Liability," which reads:

> This endorsement forms a part of the policy to which it is attached.
>
> . . .

4

No. 11-31030

Exclusion xi.f. "Pollution Liability" of this policy shall not apply, however, provided that the Insured establishes that all of the following conditions have been met:

. . .

> C) The discharge, dispersal, release or escape became known to the Insured within 72 hours after its commencement.

> D) The discharge, dispersal, release or escape was reported in writing to these underwriters within 21 days after having become known to the Insured.

. . .

Coverage, if any, provided by the endorsement will:

> A) Apply only if such coverage is also provided in the underlying insurance(s) . . . .

. . .

Such coverage, however, shall only apply excess of valid and collectible underlying insurance.

All other terms and conditions remaining unaltered.

NYMAGIC insures the second bumbershoot policy ("Bumbershoot 2"), which provides $5,000,000 over Bumbershoot 1. The first section under the heading "Insuring Agreement" in Bumbershoot 2 is titled "Coverage" and reads in pertinent part:

This Policy is to indemnify the "Assured" in respect of the following . . .

(a) All Protection and Indemnity risks. . . .

(b) . . . Collision . . . Liabilit[y] . . . .

(c) All other sums which the "Assured" shall become legally liable to pay . . . in  respect of claims made against the "Assured" for damages . . . on account of . . . "Property Damage" . . . .

No. 11-31030

Under the heading "Exclusions" Bumbershoot 2 states:

> This Policy Shall Not Apply: –
>
> 1. To any claim directly or indirectly in consequence of the actual or potential discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, petroleum products or derivatives, liquids or gases, waste materials, sewerage or other toxic chemicals, irritants, contaminants or pollutants into or upon land, atmosphere or any watercourse or body of water.

Under the heading "Conditions" Bumbershoot 2 lists, among other conditions, the following:

> 9. NOTICE OF OCCURRENCE: Whenever the "Assured" has information from which the "Assured" may reasonably conclude that an "occurrence" covered hereunder involved injuries or damages which, in the event that the "Assured" should be held liable, is likely to involve this policy, notice shall be sent as soon as practicable to the Company, provided, however, that failure to notify the Company of any "occurrence" which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

Endorsement #8, attached to Bumbershoot 2 and titled "Follow-Form Pollution Endorsement (Sudden & Accidental Limitation)," further explains the pollution exclusion and provides a buyback. The endorsement states in relevant part:

> I. ABSOLUTE POLLUTION EXCLUSION
>
> (A) In consideration of the premium charged, it is hereby agreed that this policy shall not apply to any liability for . . . "property damage" . . . arising out of the . . . "release" of "pollutants" into . . . any watercourse, water supply, reservoir or body of water.
>
> It is further agreed that the intent and effect of this exclusion is to delete from any and all coverage's afforded by this policy any "occurrence", claim, suit, cause of action, liability, settlement,

6

No. 11-31030

judgement, defense costs or expenses in any way arising out of such "release" . . . .

. . .

II. SUDDEN AND ACCIDENTAL BUYBACK

(A) It is hereby agreed that the above Absolute Exclusion shall not apply provided that the Named Assured establishes that all of the following conditions have been met:

. . .

(4) The occurrence became known to the assured within 72 hours after its commencement.

(5) The occurrence was reported in writing to those underwriters within 30 days after having become known to the assured.

. . .

ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.

NYMAGIC, Federal, and St. Paul insure the third bumbershoot policy ("Bumbershoot 3"), which provides $40,000,000 over Bumbershoot 2. The second section under the heading "Excess Bumbershoot Liability" in Bumbershoot 3 is titled "Coverage" and reads in pertinent part:

The company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured in respect of the following:

A. All Protection and Indemnity risks of whatsoever nature covered by the underlying Bumbershoot policies.

B. . . . Collision Liabilities . . . .

C. All other sums which the Assured shall become legally liable to pay . . . in respect of claims made against the Assured for damages of whatsoever nature, on account of:

7

No. 11-31030

. . .

> 2) Property Damage . . . .

The fourth section under the "Excess Bumbershoot Liability" heading is titled "Conditions" and lists, among other conditions, the following "Notice of Occurrence" condition:

> Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involved injuries or damages which, in the event that the Assured should be held liable, is likely to involve this policy, notice shall be sent to the Company as soon as practicable, provided, however, that failure to notify the Company of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

Endorsement #8 attached to Bumbershoot 3 is exactly the same as Endorsement #8 attached to Bumbershoot 2, containing the same "ABSOLUTE POLLUTION EXCLUSION" and "SUDDEN AND ACCIDENTAL BUYBACK" provisions as reproduced in relevant part above.

The insurers sought a declaratory judgment that they are not liable for the losses arising out of the allision because Settoon did not meet the requirements in the endorsements, which would have provided the pollution liability excluded by the pollution exclusions. The parties filed cross-motions for partial summary judgment. The district court made three holdings: 1) the umbrella insurers are not liable on the Bumbershoot 2 and Bumbershoot 3 policies because Settoon did not comply with the 72-hour knowledge and 30-day notice provisions in the buybacks; 2) SNIC is liable on the Bumbershoot 1 policy because it delayed delivery of the policy to Settoon; and 3) SNIC is liable for prejudgment interest beginning on the date Settoon made judicial demand.

8

No. 11-31030

## II

We review grants of summary judgment de novo, applying the same standards as the district court. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999). "[T]he party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact . . . .'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact issue is "material" if its resolution could affect the outcome of the action. *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). When reviewing summary judgment decisions, we construe all facts and inferences in the light most favorable to the non-moving party. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).

We review interpretations of insurance policies de novo. *Old Republic Ins. Co. v. Comprehensive Health Care Assocs., Inc.*, 2 F.3d 105, 107 (5th Cir. 1993). Likewise, we review interpretations of state law de novo, *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 642 F.3d 506, 509 (5th Cir. 2011), "resolving questions of Louisiana law the way the Louisiana Supreme Court would interpret the statute based upon prior precedent, legislation, and relevant commentary." *Commerce & Indus. Ins. Co. v. Grinnell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002) (internal quotation marks omitted).

No. 11-31030

## III

Settoon asserts the umbrella insurers are liable despite Settoon's failure to provide them notice within 30 days. To provide the pollution liability excluded by the pollution exclusion, Bumbershoot 2 and Bumbershoot 3 require the following condition be met in the pollution endorsement: "(5) The occurrence was reported in writing to those underwriters within 30 days after having become known to the assured." Settoon asserts its non-compliance with the 30-day notice provision is not cause for barring liability for three reasons: 1) the insurers must, but cannot, show they were prejudiced by the delay; 2) when the 30-day notice provision is read alongside the general "Notice of Occurrence" provision in the Bumbershoot 3 policy, it is clear that delays beyond 30 days are permitted when the insured does not immediately realize the occurrence gives rise to a claim; and 3) Louisiana's doctrine of impossibility excuses Settoon's failure to provide notice within 30 days. Settoon is mistaken on all three counts; the umbrella insurers are not liable because Settoon failed to provide notice within 30 days.

## A

First, Settoon asserts the insurers are required to, but cannot, show prejudice from the delay. The parties rely on Texas law a great deal in debating whether the insurers must show prejudice resulting from the late notice. This case arises under Louisiana law, so Texas law is informative but not controlling. In interpreting Texas law, we have drawn a distinction between "occurrence" policies, where "any notice requirement is subsidiary to the event that triggers coverage," and "claims-made" policies, where "notice itself constitutes the event that triggers coverage," in deciding whether the insurer is required to show

prejudice as a result of late notice. *See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658–59 (5th Cir. 1999). *Matador* involved a 30-day notice provision in a pollution buyback very similar to the one at issue here, and we held, "The nature of St. Paul's and Matador's bargain . . . resembles the nature of the bargain underlying a 'claims-made' policy. Accordingly, we see no reason to apply a prejudice requirement and not to hold the parties to the specific terms of their bargain." *Id.* at 659; *see also Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co.*, 112 F.3d 184, 189 (5th Cir. 1997) (interpreting Texas law to require strict compliance with notice provision in pollution endorsement where pollution exclusion was clear). In a pair of decisions after *Matador*, the Texas Supreme Court held that even in claims-made policies, insurers must show prejudice to defeat liability where the insured does not comply with a notice provision that is a condition precedent in the main body of the policy. *Fin. Indus. Corp. v. XL Specialty Ins. Co.*, 285 S.W.3d 877, 879 (Tex. 2009); *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 375 (Tex. 2009). Those cases applied Texas law and did not address notice provisions in endorsements.

Only one Louisiana case has addressed the interpretation of notice provisions in exceptions to exclusions under Louisiana law, but then only tangentially. *Smith v. Reliance Ins. Co. of Il.*, 807 So. 2d 1010, 1023 (La. Ct. App. 2002) (Daley, J., concurring). The concurring opinion contrasted the position of the insurer in that case, which cited *Matador* for the proposition that notice requirements in buyback endorsements must be strictly construed, with the position of the insured, which asserted Louisiana law, unlike the Texas law holding in *Matador*, requires a showing of prejudice. *Id.* The concurring opinion

explicitly recognized Louisiana law does not squarely answer the question: "This unresolved question of law, whether to strictly apply the notice requirements of a Limited Buy Back Endorsement, is an issue upon which the trial court has not yet ruled. This [is an] open question of law . . . ." *Id.*

In Louisiana, an insurer is not liable where a claims-made policy requires notice within the policy period but notice is not given until after the policy period. *Hood v. Cotter*, 5 So. 3d 819, 824–25, 830 (La. 2008). The notice provision in the main body of the policy "provides the scope of coverage bargained for by defendant." *Id.* at 829; *see also Vitto v. Davis*, 23 So. 3d 1048, 1053 (La. Ct. App. 2009) (holding requirement of notice within policy period in the main body of the policy controls scope of coverage by insurer even though injured third party bringing suit could not have known of claim within policy period because of wrongdoing of insured). *Hood* reasoned, "[T]he purpose of the claims-made-and-reported requirement is to ease problems in determining when a claim is made or whether an insured should have known a claim was going to be made." *Hood*, 5 So. 3d at 827 (citing *Livingston Parish Sch. Bd. v. Fireman's Fund Am. Ins. Co.*, 282 So. 2d 478 (La. 1973)).

In an earlier case interpreting Louisiana law, this circuit held where "immediate notice" is an express condition precedent to coverage in the main body of the policy, "failure to comply with the provision precludes coverage" and "prejudice need not enter the calculation." *Joslyn Mfg. Co. v. Liberty Mut. Ins. Co.*, 30 F.3d 630, 633–634 (5th Cir. 1994). Where policy holders are "consumers unlikely to be conversant with all the fine print of their policies," strict adherence to notice provisions that are conditions precedent is not as important as when "both parties are sophisticated businesses, which are expected to be

conversant with the terms of their contracts." *Id.* at 634 (citing *MGIC Indem. Corp. v. Cent. Bank of Monroe, La.*, 838 F.2d 1382, 1387 (5th Cir. 1988)); *see also Jackson v. State Farm Mut. Auto. Ins. Co.*, 29 So. 2d 177, 179 (La. 1946) (holding delayed-notice cases must balance equities, including prejudice and discovery of injury, in case where injured party was ordinary consumer). On the other hand, where notice is *not* a condition precedent to coverage, an "insurer cannot deny coverage merely because its insured failed to give notice of loss as soon as practicable" without a showing of prejudice. *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1172 (5th Cir. 1992). Louisiana case law does not directly address whether, to deny recovery, an insurer must show prejudice resulting from an insured's non-compliance with a condition precedent in an endorsement that requires notice within a set time period after an occurrence. *See Smith*, 807 So. 2d at 1023 (Daley, J., concurring).

Whether a notice provision is a "condition precedent" to recovery depends on the language of the policy; we have held that "the words 'condition precedent' mean exactly what they say, and failure to comply with this provision preclude[s] recovery, regardless of whether prejudice [is] shown." *Gulf Island, IV v. Blue Streak Marine, Inc.*, 940 F.2d 948, 955 (5th Cir. 1991) (citing *MGIC*, 838 F.2d at 1385–86). *Gulf Island, IV* went on to state that certain language short of the exact phrase "condition precedent" may not be sufficient to make a notice requirement a condition precedent to recovery:

> The Lloyd's policy requires notice only when the assured "may reasonably conclude" that a covered occurrence has taken place. This language falls short of the express condition precedent language that we held in *MGIC* and *Auster Oil* [*& Gas, Inc. v. Stream*, 891 F.2d 570 (5th Cir. 1990)] was necessary to make giving notice a condition precedent to recovery.

No. 11-31030

*Gulf Island, IV*, 940 F.2d at 956.

Turning to the insurance contracts at issue, we hold the umbrella insurers are not liable to Settoon regardless of prejudice to the umbrella insurers. First, it is clear that the notice condition in the endorsement is a "condition precedent" despite not using the precise phrase "condition precedent." The buyback clearly indicates the notice provision is a condition precedent to recovery under the endorsement. The absolute pollution exclusion states, "It is . . . agreed that the intent and effect of this exclusion is to delete from any and all coverage's . . . any . . . claim . . . in any way arising out of [pollution]." The buyback states, "It is hereby agreed that the above Absolute Exclusion shall not apply provided that the Named Assured established that all of the following conditions have been met . . . ." Settoon must "establish" that the "conditions" have been met in order for the absolute pollution exclusion not to apply. Short of the exact phrase "condition precedent," there is almost no stronger language that could establish a "condition precedent" to recovery. Further, Settoon is a sophisticated business, not an ordinary consumer. *Cf. Joslyn Mfg.*, 30 F.3d at 633–34. Therefore, we analyze the notice provision in the buyback as a condition precedent directed at a sophisticated business.

The bargain here "delete[s] from any and all coverage[]" pollution liability unless the insured gives notice within 30 days of the occurrence. Pollution liability is not stripped away because of a violation of the notice provision; rather, non-compliance prevents the exception to the exclusion from taking effect in the first instance, meaning the pollution exclusion remains in effect. In Louisiana a violation of a provision mandating notice within the policy period allows the insurer to avoid liability, *Hood*, 5 So. 3d at 824–25, because the notice

14

No. 11-31030

provision determines the scope of coverage bargained for, *Vitto*, 23 So. 3d at 1053. Here, the notice provision in the buyback reflects the allocation of risk the parties bargained for. Therefore, holding the umbrella insurers liable where the conditions of the buyback were not met would alter the terms of the parties' bargain. Because Settoon did not comply with the 30-day notice provision, which is a condition precedent to recovery under the buyback, the umbrella insurers are not liable under the Bumbershoot 2 and Bumbershoot 3 policies.

**B**

Second, Settoon points out that although the 30-day notice provision is present as a condition in the pollution endorsement, the notice provision in the bodies of the main Bumbershoot 2 and Bumbershoot 3 policies requires notice "as soon as practicable" and provides that "failure to notify the Company of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims." Settoon asserts this notice provision in the main body of the policy must be given effect because the endorsement includes a clause stating, "All other terms and conditions remaining unchanged" and does not include a ranking clause that would have given precedence to provisions of the endorsement over provisions of the main body of the policy. By reading the two provisions together, Settoon maintains delays of notice beyond 30 days are permitted because the occurrence "did not appear to involve this Policy" until the captain of the CATHY confessed his vessel's involvement in the allision. The umbrella insurers respond that the "Notice of Occurrence" provision does not apply to claims under endorsements, but rather only to claims under the main body of the policy, because it speaks of occurrences "covered hereunder."

15

No. 11-31030

Where an insurance policy is clear, we do not engage in further interpretation beyond the plain meaning of the words. *See* LA. CIV. CODE art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994) ("The parties' intent as reflected by the words in the policy determine the extent of coverage." (citing *Trinity Indus., Inc. v. Ins. Co. of North America*, 916 F.2d 267, 269 (5th Cir. 1990))). Where a policy's words are subject to different interpretations, we resolve ambiguities in favor of the insured. *Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 517–18 (5th Cir. 2005).

Additionally, we read each insurance policy as a whole. *Id.* at 517. "[E]ndorsements affixed to a policy of insurance are to be construed in connection with the printed provisions of the policy and the entire agreement harmonized, if possible, but in the event of irreconcilable conflict, the endorsement or rider prevails." *Zurich Ins. Co. v. Bouler*, 198 So. 2d 129, 131 (La. Ct. App. 1967); *see also Smith v. Burton*, 928 So. 2d 74, 79 (La. Ct. App. 2005) ("Documents evidencing the complete contract, such as binders and riders, when executed together for that purpose, must be read together."). In contract interpretation in the context of insurance policies, "the specific controls the general." *Smith*, 928 So. 2d at 79.

Here, under Louisiana law primacy is given to the endorsement over the main body of the policy. *See Zurich Ins. Co.*, 198 So. 2d at 131. That is, the liability provisions of the policy do not encompass pollution liability until the conditions of the endorsement are met. The absolute pollution exclusion specifically states, "It is . . . agreed that the intent and effect of this exclusion is

to delete from any and all coverage's afforded by this policy any . . . claim . . . in any way arising out of [pollution]." The buyback then states this language will not apply "provided that" notice is given within 30 days. Therefore, even assuming without deciding that Settoon complied with the notice requirement in the main body of the policy, the absolute pollution exclusion remains in effect because Settoon did not meet the notice condition in the buyback.

## C

Third, Settoon asserts Louisiana's doctrine of impossibility excuses its non-compliance with the 30-day notice provision. It is true that under Louisiana law, an insurer cannot impose a *penal reduction* in benefits for failure to comply with a notice provision. *Mansour v. State ex rel. State Emps. Grp. Benefits Program*, 694 So. 2d 1096, 1100 (La. Ct. App. 1997) (holding insurer liable despite insured's non-compliance with 72-hour notice provision where insurer could not show prejudice and where insured could not comply with notice provision because of condition insured against, which was a heart attack); *see also Hayward v. Carolina Ins. Co.*, 51 So. 2d 405, 407 (La. Ct. App. 1951) (holding insurer cannot rely on failure to serve prompt notice when insured gave notice immediately after discovery of claim and in absence of fraud or prejudice to insurer). This case law, however, is not an application of the doctrine of impossibility, which is codified as follows: "An obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible." LA. CIV. CODE art. 1873. The doctrine applies to failures to perform *obligations*. *Id*. An insured party is not contractually obliged to satisfy conditions precedent, so the doctrine of impossibility is inapplicable. Therefore,

No. 11-31030

we hold the doctrine of impossibility does not excuse Settoon's failure to provide notice within 30 days.

## D

The umbrella insurers are not liable to Settoon because Settoon failed to comply with the 30-day notice provision in the buyback. Therefore, we need not reach the issue of whether Settoon complied with the 72-hour knowledge provision. The district court did not err in holding the umbrella insurers are not liable to Settoon.

## IV

The district court held SNIC cannot rely on the specific terms in the Bumbershoot 1 buyback because SNIC delayed delivery of the policy in violation of LOUISIANA REVISED STATUTES Annotated § 22:873(A) (2012), which, subject to payment of the premium, requires insurers to deliver policies within a reasonable period of time after issuance. SNIC did not give Settoon the policy until months after Settoon's premium payment. Therefore, the district court held SNIC liable to Settoon on the Bumbershoot 1 policy. On cross-appeal, SNIC asserts the terms of the policy are applicable for two reasons: 1) SNIC did not "issue" the policy when it sent the binder, so the delivery obligations of § 22:873(A) do not apply; and 2) delayed delivery in violation of § 22:873(A) does not free Settoon from the policy terms if Settoon was not prejudiced by a lack of knowledge of the terms, and Settoon was not prejudiced. Because delayed delivery in violation of § 22:873(A) prevents SNIC from relying on the exclusions in the policy and the conditions precedent of the exceptions to the exclusions, whether or not the delay caused prejudice to Settoon, we hold SNIC is liable to Settoon.

No. 11-31030

## A

"We may affirm the district court's judgment on any basis supported by the record," *United States v. Roussel*, 705 F.3d 184, 195 (5th Cir. 2013); however, "[t]he general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal." *Celanese Corp. v. Martin K. Eby Constr. Co., Inc.*, 620 F.3d 529, 531 (5th Cir. 2010). SNIC did not argue before the district court that § 22:873(A) does not apply to its delay in delivering the policy because SNIC did not "issue" the policy until Settoon sent the underlying policies. Rather, SNIC's primary argument before the district court was that it *complied* with the statute by delivering the binder that stated the effective date of the policy was November 2, 2006.

Admittedly, in one paragraph of its summary judgment motion SNIC contended the only reason the policy did not "issue" until March 2, 2007 was that Settoon delayed in delivering the underlying policies. It is clear from the context of the brief that SNIC did not mean to argue in this paragraph that § 22:873(A) did not apply because SNIC did not "issue" the policy for purposes of the statute's delivery requirement; rather, SNIC used this paragraph to argue Settoon should not be advantaged by its own delay in sending the underlying policies. SNIC maintained throughout its summary judgment motion that it delivered the policy in compliance with § 22:873(A) by delivering the binder. Thus, the district court did not have an opportunity to decide whether § 22:873(A) was applicable on SNIC's "issuance" theory because Settoon and SNIC disputed only whether SNIC's delivery of the binder sufficed for compliance with the statute's delivery requirement. *See Celanese Corp.*, 620 F.3d at 531. Accordingly, SNIC waived its assertion that § 22:873(A)'s delivery

19

requirement is inapplicable because it did not "issue" the policy until after Settoon sent the underlying policies.

## B

SNIC asserts the terms of Bumbershoot 1 are applicable because the delayed delivery of the policy did not prejudice Settoon, as Settoon had knowledge of the terms regardless of the delivery timing. Settoon asserts prejudice is not a relevant factor under Louisiana law and, in any event, Settoon was in fact prejudiced because it could not have known of Bumbershoot 1's specific terms. Louisiana statutory law provides:

> Subject to the insurer's requirements as to payment of premium, every policy shall be delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance.

LA. REV. STAT. Ann. § 22:873(A) (2012).

In *Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250 (La. 1993), the Louisiana Supreme Court held an insurer could not rely on an exclusion to deny recovery where the insurer violated § 22:873(A) by failing to deliver the policy and where the insured "reasonably assumed that its liability . . . was covered." *Id*. at 1253. *Louisiana Maintenance Services* did not explicitly state whether it relied on both grounds in denying the insurer the right to rely on the exclusion, but it strongly suggested the statutory violation was enough standing alone. *Id*. ("Insurance policy exclusions are not valid unless clearly communicated to the insured. . . . Since Lloyd's failed to comply with the statutory requirement of delivery, it could not rely on its policy exclusions."). The Louisiana Supreme Court did, however, explain that the insured reasonably thought the insurer covered the claim (because of the specific needs of the insured) and concluded the insurer acted in

No. 11-31030

an arbitrary and capricious manner. *Id.* The Court explained the statute "require[s] that an insured be informed of a policy's contents. Notice of any exclusionary provisions is essential because the insured will otherwise assume the desired coverage exists." *Id.* at 1252.[1]

A Louisiana appellate court relied on *Louisiana Maintenance Services* in holding an insurer did not violate § 22:873(A) when it delivered the policy to the *association* it insured but not to each *individual* within the association. *Naquin v. Fortson*, 774 So. 2d 1277, 1280 (La. Ct. App. 2000). *Naquin* held delivery to the association complied with the statute and also relied on the fact that "the principles underlying the delivery requirement were met in this case; that is, [the insured] was clearly aware that automobile liability coverage was excluded under the [insurer's] policy." *Id.* The statutory compliance alone, however, seems to have been enough to allow the insurer to rely on the exclusion. *Id.* at 1279 ("If an insurer fails to comply with the statutory requirement of delivery, it cannot rely on its policy exclusions." (citing *La. Maint. Servs.*, 616 So. 2d at 1253)).

We hold a finding of prejudice is not required to disallow reliance on the policy terms and endorsement provisions. *Louisiana Maintenance Services*

---

[1] A Louisiana appellate court applying *Louisiana Maintenance Services* held an insurer did not violate § 22:873(A) where it delivered the policy after the event giving rise to the claim but within a reasonable time period (two months) and where the insured had knowledge of the relevant exclusion. *MacLaff, Inc. v. Arch Ins. Co.*, 978 So. 2d 482, 488–89 (La. Ct. App. 2008). The Louisiana Supreme Court vacated that opinion on appeal, however, in an opinion that reads in its entirety, "There exist genuine issues of material fact that require a trial on the merits. The decision of the court of appeal and the trial court are vacated. The case is remanded to the trial court for further proceedings." *MacLaff, Inc. v. Arch Ins. Co.*, 996 So. 2d 1080, 1080–81 (La. 2008). Because the basis for the Louisiana Supreme Court's decision is opaque, we do not rely on the appellate court opinion, any part of which could be an incorrect espousal of Louisiana law.

No. 11-31030

indicates delayed delivery in violation of § 22:873(A) is enough to prevent SNIC from relying on the pollution exclusion in the main body of the policy regardless of prejudice to Settoon. *See La. Maint. Servs.*, 616 So. 2d at 1253 ("Since [the insurer] failed to comply with the statutory requirement of delivery, it could not rely on its policy exclusions."). The Louisiana Supreme Court's explanation of the purpose of § 22:873(A) was not essential to its holding; rather, what was essential was the violation of the statute. *Id.* at 1252–53; *see also Naquin*, 774 So. 2d at 1279–80. Therefore, under Louisiana law an insurer cannot take advantage of favorable policy terms where it delayed delivery of the policy after the insured payed the premium. *La. Maint. Servs.*, 616 So. 2d at 1253. Moreover, even if Settoon could have known of the pollution exclusion, it could not have known of the specific terms of the pollution buyback endorsement prior to receiving the policy and endorsements. SNIC cannot rely on the pollution exclusion or specific terms of the buyback because it delayed delivery of the policy and endorsements to Settoon after Settoon paid the premium. The district court did not err in holding SNIC is liable to Settoon.

## V

SNIC asserts that even if it is liable to Settoon, it is not liable for prejudgment interest because federal maritime law, not Louisiana law, controls. Further, SNIC asserts that if it is liable for prejudgment interest, the interest should be calculated from the date Settoon paid for the allision, not from the date of judicial demand. SNIC is incorrect in its first assertion: SNIC is liable for prejudgment interest because Louisiana law controls. SNIC is correct, however, in its second assertion: prejudgment interest should be calculated from the date Settoon paid for the allision.

No. 11-31030

## A

SNIC is liable for prejudgment interest because Louisiana law applies over federal maritime law. This circuit created a three-part instructive test for determining whether federal maritime or state law controls a disputed issue in *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886–87 (5th Cir. 1991). The three factors are: "(1) whether the federal maritime rule constitutes entrenched federal precedent; (2) whether the state has a substantial and legitimate interest in the application of its law; (3) whether the state's rule is materially different from the federal maritime rule." *Id*. at 886 (internal quotation marks and citations omitted).

The first prong of the three-factor test asks whether federal law is entrenched. *Id*. "In the absence of preexisting entrenched federal maritime law . . . [t]he application of unfamiliar federal maritime rules engenders undesirable uncertainty among maritime actors." *Id*. at 888. In order to determine whether federal law was entrenched, *Anh Thi Kieu* analyzed our circuit precedent and concluded that although the language in our precedent *recognized* the federal law at issue in that case, it did not have to *apply* the federal law, so the federal law was not entrenched. *Id*. at 888–89. The same conclusion is warranted here.

Where a primary and excess policy are drafted together in a "carefully dovetailed, integrated program in which each [insurer] had significant interests at stake," this circuit has held under maritime law the excess insurer is liable for prejudgment interest on the amount owed by the primary insurer that exceeds the primary policy's limit. *Alcoa S.S. Co. v. Charles Ferran & Co.*, 443 F.2d 250, 255 (5th Cir. 1971). *Alcoa Steamship* specifically held, "But we do not make this as a choice of law for general (or Louisiana) application." *Id*. Rather,

No. 11-31030

*Alcoa Steamship* limited the holding to the carefully crafted insurance plan, where "[o]bviously what was in mind was what has occurred here—a Court holding that despite the fixed ceiling of [a certain amount], the law requires payment of interest thereon." *Id.* at 256. In the context where both the primary and excess insurer were liable to the insured, the court required the excess insurer to pay any prejudgment interest beyond the limits of the primary insurance policy. *Id.* This circuit relied on *Alcoa Steamship* fifteen years later to hold, "[A] marine insurer is not liable for interest in excess of its policy limits unless language in the policy so provides." *Ryan Walsh Stevedoring Co. v. James Marine Servs., Inc.*, 792 F.2d 489, 493 (5th Cir. 1986).

*Ryan Walsh* and *Alcoa Steamship* addressed situations where both primary and excess insurers were liable, and held the excess insurers were liable for prejudgment interest beyond the limits of the primary insurers. *Ryan Walsh*, 792 F.2d at 493; *Alcoa S.S.*, 443 F.2d at 256. Whether the primary or excess insurer was held liable, the insured received prejudgment interest as contemplated in the drafting of the policies.[2] Our precedent has not applied the *Alcoa Steamship* rule where no insurer would be liable for prejudgment interest. Therefore, the *Alcoa Steamship* rule is not entrenched federal maritime law in this context, where there is no excess insurance liability beyond Bumbershoot 1.

The second *Anh Thi Kieu* factor asks whether Louisiana has a substantial interest exceeding the interest of maritime law. *Anh Thi Kieu*, 927 F.2d at 886. *Anh Thi Kieu* explained a state has "a substantial and legitimate interest" if "the local state interest materially exceeds the comparative maritime concerns in the

---

[2] One Eleventh Circuit case that dealt with only one insurance policy relied on *Alcoa Steamship* and *Ryan Walsh* to disallow prejudgment interest beyond the policy's limit. *Steelmet, Inc. v. Caribe Towing Corp.*, 842 F.2d 1237, 1244 (11th Cir. 1988).

controversy." *Id.* at 887 (emphasis removed). There, we held "Texas has a material interest in ensuring that marine insurance underwriters do not invalidate the insurance protection of Texas citizens on the basis of misrepresentations that were neither willfully or intentionally asserted." *Id.* at 887–88. Similarly, here Louisiana has an interest in compensating insured parties with prejudgment interest when insurers wrongfully deny recovery, especially where insurers violate Louisiana statutory law—in this case § 22:873(A) governing delivery of insurance policies.

The third *Anh Thi Kieu* factor asks whether there is a material difference between state and federal law. *Anh Thi Kieu*, 927 F.2d at 886. "[A]pplication of state law inconsistent with the core principles of maritime law would defeat the reasonably settled expectations of maritime actors. . . . [S]tate law should not be applied unless it bears a reasonable similarity to the federal maritime practice." *Id.* at 887 (internal quotation marks and citations omitted). Unlike the federal law of *Alcoa Steamship* and *Ryan Walsh*, the Louisiana courts have held primary and excess insurers are liable for prejudgment interest on their portion of liability, even if the interest *exceeds policy limits*. *Moon v. City of Baton Rouge*, 522 So. 2d 117, 127 (La. Ct. App. 1987) ("[The requirement to pay prejudgment interest] applies to primary as well as excess insurers, making each liable for the interest attributable to their proportionate share of the total judgment."). This is a difference from federal law. *See Ryan Walsh*, 792 F.2d at 493. This is not, however, a case where "application of state law inconsistent with the core principles of maritime law would defeat the reasonably settled expectations of maritime actors" because Louisiana "law shares the concern of federal maritime law" that insurers should be liable for prejudgment interest,

even if the allocation of that interest is different. *Anh Thi Kieu*, 927 F.2d at 887. Therefore, this factor adds little weight to SNIC's assertions, especially when weighed against the other two factors. As a result, the *Anh Thi Kieu* factors lead us to conclude Louisiana law should be applied to the issue of prejudgment interest. Accordingly, SNIC is liable to Settoon for prejudgment interest.

## B

SNIC is correct to assert the interest should be calculated from the date Settoon paid out its obligations rather than the date Settoon made judicial demand. As the above analysis indicates, Louisiana law is applicable to liability for prejudgment interest. *See* Part V.A. *supra*. Under Louisiana law, interest is calculated from the date of judicial demand only for "*ex delicto*" damages. LA. REV. STAT. Ann. § 13:4203. Louisiana law distinguishes between "*ex delicto*" and "*ex contractu*" damages:

> The Louisiana Court of Appeals explained that "the classical distinction between 'damages *ex contractu*' and 'damages *ex delicto*' is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons."

*Amoco Prod. Co. v. Tex. Meridian Res. Exploration Inc.*, 180 F.3d 664, 672 (5th Cir. 1999) (alterations removed) (quoting *Davis v. LeBlanc*, 149 So. 2d 252, 254 (La. Ct. App. 1963)).

Here, the insurance obligations are "*ex contractu*" because they "flow from the breach of a special obligation contractually assumed by the obligor." *Davis*, 149 So. 2d at 254. SNIC's obligation is contractual, arising out of SNIC's agreement to pay Settoon for Settoon's liability for damage to third parties; SNIC's obligation does not arise out of a general duty SNIC owes all persons or

No. 11-31030

out of its agreement to pay Settoon for damage to Settoon (even though the underlying incident with the third party was a tort).  "The general rule in Louisiana is that legal interest runs from the due date of the obligation in question." *Am. Cyanamid Co. v. Elec. Indus., Inc.*, 630 F.2d 1123, 1129 (5th Cir. Unit A 1980).  In this case the obligation was due on the date Settoon paid for the damage from the allision, which is the date Settoon suffered the insured-against loss because it lost the funds it paid to third parties.  *See Arceneaux v. Amstar Corp.*, 969 So. 2d 755, 785 (La. Ct. App. 2007) (holding insurer liable to insured for prejudgment interest on amount insured paid in settlement to third parties from date insured paid third parties, not from date of judicial demand).  The outcome may be different were SNIC providing recovery for damage to Settoon resulting from an accident or a tort caused by a third party because in that case the damage to Settoon would arise at the time of the accident or tort.  That is not our case.  *Cf. id.* (". . . [The insured] argues that this is a tort suit in which [the insurer] was joined as a direct defendant; thus, interest on an award against [the insurer] is due from the date of judicial demand. . . . This argument . . . overlooks that the present dispute is solely a contractual dispute between [the insured] and [the insurer].").  Accordingly, SNIC is liable for prejudgment interest from the date Settoon paid third parties for the damage caused by the allision because that is when SNIC's obligation arose.

## VI

For these reasons, we AFFIRM the district court's judgment in all respects except for the calculation of prejudgment interest.  We REVERSE and REMAND for calculation of prejudgment interest in a manner consistent with this opinion.